CLARK, Plaintiff in Error, *vs.* MAGUIRE, Defendant in Error.

1. A. conveyed to B. one half of certain capital stock "in trust for the sole benefit of the wife of C. and her children;" also, one half of the profits arising from the stock, "to be applied by B., *for the benefit* of C.'s wife and her children." *Held*, this language is sufficient to exclude C.'s marital right to the profits.

2. A trustee has no power, by a deed substituting another trustee, to change the nature of the trust, or the use of the trust fund.

3. No particular form of words is necessary to vest property in a married woman to her separate use, so as to exclude the marital rights of her husband. Any words which indicate the intention will be sufficient.

### *Error to St. Louis Circuit Court.*

This was an action of trespass, by the plaintiff in error, against the defendant in error, for taking personal property, and the questions which arise upon the record involve the construction of two deeds, under which the plaintiff claimed the property taken, the case turning upon the question of his title, under the deeds, to the property; the plaintiff submitted to a nonsuit, under the instruction of the court that " upon the whole of the evidence in this case, the plaintiff is not entitled to recover in this action."

The facts, as they appeared in evidence, are as follows : The sheriff of St. Louis county, under two executions, in favor of the defendant here, Maguire, against Dennis Marks, levied upon certain flour, wheat and barrels, claimed by the plaintiff, Clark, and identified as part of the property referred to in the deeds under which Clark claimed title, also given in evidence, and sold it and applied the proceeds to the payment of the executions in favor of Maguire. The levy and sale were made by the express directions, both verbally and in writing, of Maguire.

The plaintiff, to show his title to the property, showed Henry D. Bacon in possession of a mill, as lessee, and owning the personal property at the mill; the plaintiff then gave in evidence a deed from Henry D. Bacon to Joshua H. Alexander, dated July 17th, 1846, (recorded the same day,) by which

deed, after reciting that his sister, Mrs. Amira M. Marks, wife of Dennis Marks, of St. Louis, by reason of the failure of her husband in business, then stood in need of the aid and support of her own blood relatives and near friends, and that it was his desire to make for her such comfortable and independent provision as might be in his power, he conveyed to Alexander half of the capital stock and property vested in, and used by him, in carrying on the mill, in trust, that he, Alexander, should hold it for the sole benefit of Mrs. Marks, (his sister, wife of Dennis Marks,) and her children, and to remain for a time vested in that business ; and when the business ceased, one half to remain his (Bacon's) property, and the other to be delivered to the trustee, to be by him applied for the benefit of Mrs. Marks and her children, and providing that the trustee, whenever he should receive any money or property, by virtue of that deed, should pay and deliver it to Mrs. Marks, to be by her employed, as she might judge best, for the interest of herself and her children. And if, after the death of said Mrs. Marks, there remain in, or come to the hands of the trustee, any money or property on the account aforesaid, the same should be held and disposed of for the interest of her surviving children, in equal shares.

The plaintiff also gave in evidence a deed from said Alexander to himself, dated the second day of July, 1847, and recorded the same day, whereby, after referring to the foregoing deed, and reciting that the joint business under it had terminated, and that Bacon had settled with him and had ascertained the amount due to him, under that deed, and that Mrs. Marks had directed him to deliver and pay said property to the plaintiff, to be held by him, as trustee, for the benefit of herself and her children, he, by the express consent and direction of Mrs. Marks, evidenced by her signature to the deed, conveyed the same to the plaintiff, in trust, that the same should be used and employed in such manner, and in such business, and should be placed in the custody and under the control of such person or persons as the said Amira Marks might, at any time, in

writing, direct ; and that the same should be assigned, trans-
ferred, and disposed of in such manner, and to such persons,
as she, the said Amira, might, in writing, direct.

The plaintiff also gave in evidence the lease to Henry D.
Bacon, and an assignment of it, dated July 2d, 1847, to the
plaintiff, as trustee for Mrs. Amira M. Marks and her children,
for their sole use and benefit.  And also gave in evidence, a
power of attorney from Luther C. Clark to Dennis Marks, by
the direction of Mrs. Marks, authorizing him to take posses-
sion of said property and to regard and carry out Mrs. Marks'
directions in regard to said trust fund, and account to her for
the proceeds he might receive therefrom.

It was also proved that Dennis Marks, up to the time of the
levy, and since, had acted in managing and carrying on the
mill, professedly as the agent of Luther C. Clark, trustee.
And it was admitted that Mrs. Marks has four children, three
of them minors.  The plaintiff then closed his case, and the
defendant made a point upon his title under the deeds, and the
court so instructed the jury that the plaintiff submitted to a
non-suit, and moved the court to set aside the same.  The
court overruled the motion, and the plaintiff brings the case
here, for the reversal of the judgment.

*R. M. Field*, for plaintiff in error.

I.  The deed from Bacon to Alexander created an estate
for the sole benefit of Mrs. Marks and her children, *effectual*
to exclude all claims on the part of the husband or his cre-
ditors.

No technical words are necessary to create a separate estate
in the wife.  It is sufficient, that on the whole instrument, the
intent to exclude the marital rights is manifest.  2 Stor. Eq.
section 1382.  Hill on Trustees, 420.  Roper cn Husb. and
Wife, 158, *et seq*.  *Ex parte* Ray, 1 Madd. 115.  *Wills* v.
*Sayers*, 4 Madd. 409.  The word " sole" is sufficient for the
purpose.  See authorities cited, *supra*.

II.  The deed from Alexander to Clark is in like manner
effectual to exclude the husband's creditors, for it recites the

former deed, and obviously was intended simply to change the trustee and continue the former trusts.

III. Even if the second did not formally declare the trusts of the first deed, so as to exclude the creditors of the husband, still the property was holden by Clark, under the trusts of the first deed, for it was not competent for Alexander to change the trusts of the original donor. The creditor was permitted by the court below to hold the property, on the ground that the second deed did not, in terms, exclude the marital rights.

The error of the court here is palpable; for, as it was dealing with merely equitable rights, it was bound by the rules of equity; and it was admitted, that in a court of equity, the property would be bound by the trusts impressed upon it by the donor in the original deed. In short, the creditor was justified in seizing the property as equitably belonging to the debtor, when, at the same time, the court admitted the debtor had no equitable right in it whatever.

It will be observed, that the decision of the court below goes entirely to defeat the rights of the children, as well as of the wife.

*B. B. Dayton*, for defendant in error.

The property, seized under the defendant's executions against Dennis Marks, was subject to such executions. The arrangement effected by the deeds, and power of attorney given in evidence, whereby it was sought to appropriate the labor and skill of Marks to the exclusive benefit of the pretended trust fund, in exclusion of his creditors, was fraudulent, as against the latter. They had a right to the results of his skill and labor, whatever those might be. *Patterson* v. *Campbell*, 9 Ala. Rep. 933.

If Mrs. Marks and her trustee chose to mix up the trust fund with the skill and labor of Marks, so that their relative influence in producing the joint fruits, and the share of each party in such fruits, could not be distinguished and ascertained, she must suffer and not creditors. The latter could seize the joint fruits and sell the same, or at least, the interest of

Marks. If they were entitled only to some undivided portion, as the interest of Marks, still it was necessary and proper to seize all, in order to get at his interest. Story on Bailments, fourth edition, page 44, section 40. Ib. on Agency, page 193, section 205. Ib. on Equity, vol. 2, page 523, section 1282.

The evidence shows a case of insolvency on the part of Marks.

The principle invoked in the present case, is akin to that which governs a voluntary conveyance. Such a conveyance by a debtor would be void, as against an existing creditor, no matter what may have been the intention of the debtor. No man can give away what belongs to his creditors. *Reade* v. *Livingston*, 3 Johnson's Ch. R. 481. See, also, Amer. Lead. C., vol. 1, page 52, notes ; also, page 36, *et seq.*

The cases in Amer. Lead. C., vol. 1, page 319 to 327, are referred to, in support of the proposition that it was proper to seize all the property in question, to get at the interest of Marks.

It was suggested by a member of the court, that the trustee might be summoned as the garnishee of Marks. But under the terms of the deed, and the power of attorney, I respectfully suggest that the trustee could not be regarded as a debtor of Marks, or in any way responsible to him.

*Todd & Krum*, for same.

I. The deed of Bacon to Alexander plainly recognizes and embraces three distinct properties, and disposes of them differently and with different legal effect. 1. The half of the capital stock. 2. The half of the profits to arise therefrom. 3. The two notes and a pew. The language of the deed, as to the first and third, is, that they are conveyed to the trustee to be held by him " for the sole use and benefit of Mrs. Marks and her children ;" as to the second, or the profits, the language of the deed is, that they are " to be delivered to the said trustee, to be by him applied for the benefit of Mrs. Marks and her children."

Admitting that the language of the deed is sufficient to exclude all right of the husband to the property under the first and third heads, yet, such is not the case as to that under the second. By express words, no title to the profits passes to the trustee, but he is to receive them in trust, not "for the sole and separate use" of Mrs. M., but to be paid and delivered to her, to be by her used," &c. Thus, when paid and delivered to her by Alexander, the title passes to her, and becoming vested in her, with power to do with it as she pleases, not under words or provisions necessarily or apparently excluding her husband, the property becomes his, as much as a legacy or any other gift paid and delivered to her.

Now, in the second deed, it is recited that this was paid and delivered to Alexander ; and then, and not till then, he got the title to it, and then he paid and delivered it to Mrs. Marks, for such was his express duty, under the first deed, and such must, in legal effect, be construed to be the operation of the act of her, in the second deed, directing Alexander to pay and deliver it to Clark. It had then become the absolute property of Mrs. Marks, and therefore that of Dennis Marks, and consequently, her directing its transfer to Clark, by the second deed, could not take away the right of Marks already attached to it, but it still remained his property, at least *quoad* his creditors.

II. The deed of Alexander to Clark, the plaintiff below, dated July 2d, 1847, and under which he claims title to the property sued for in this suit, renders the property therein conveyed subject to the executions of creditors of Dennis Marks, or at least does not take from them what was so subject under the former deed. On the same day, Bacon also assigned the lease to Clark, in trust "for the sole use and benefit of Mrs. Marks and her children." Thus again the distinction is kept up, shown in the first deed. 10 Met. Rep. 281, 288. 2 Story's Eq. Juris. 609–10. Clancy on rights, p. 262. 2 Mylne & Keen, 184. 2 Rus. & Mylne, p. 183. *Wills* v. *Sayers*, 4 Mad. Ch. Rep. 408. 5 Ib. 491. 3 Brown's Ch. Rep. p.

381, note 4, on p. 383—note *a*, p. 385.  3 Vesey, 166.  5 Ib. 517.

III.  If the court should be of the opinion, that the language of the second deed is sufficiently operative to exclude the marital rights of Mr. Marks, then it did more than Mrs. Marks had power to do by directing it, so far as the large addition of of upwards of $8000 is concerned ; for it is the portion embraced by the first deed, which was not vested for her sole use to the exclusion of Mr. Marks.  It cannot be contended successfully, that Mrs. Marks, as to this property, could, by so directing, divest the right of her husband.  She might direct what belonged exclusively to her to be for his use and benefit, but what he had a right to, she could not deprive him of, even with his consent, as against his creditors.

RYLAND, Judge, delivered the opinion of the court.

From the statement in this case, the main questions before this court depend, for solution, upon the construction to be given to the deeds from Henry D. Bacon to Alexander, and from Alexander to Clark, the plaintiff.

To arrive at a proper decision in this case, we must look to the circumstances, as they present themselves by the record. Dennis Marks having failed in business, his brother-in-law, Bacon, stepped forward to the relief of his sister and her children.  His deed to Alexander commences by reciting, " That, whereas, my sister Mrs. Amira M. Marks, wife of Dennis Marks, of St. Louis, by reason of the failure of her husband in business, now stands in need of the aid and support of her own blood relatives and near friends, and it is my desire to make for her such comfortable and independent provision as may be in my power."  Here we perceive the object of the grantor, and the motive which prompted the transaction — the failure of Marks in business — the consequent needy situation of Mrs. Marks and her minor children, and the duty which her brother felt resting on him, to make provision for his sister, by which she might become independent and comfortable.

For this purpose, he conveys to Alexander, in trust for

Mrs. Marks and her children, one half the capital stock in the Eagle Mills establishment, then in his possession, as lessee. This stock and property, consisting of cash on hand, accounts due the mill, wheat, flour, implements, &c., not counting the lease itself, was valued at eight thousand eight hundred and seventy-two dollars. Of this, one half was conveyed to Alexander and to his executors and administrators, "subject to the trusts, conditions and limitations hereinafter expressed; that is to say, the said Alexander shall hold the title to the capital stock and property, in trust for the sole benefit of the said Mrs. Marks and her children; and the same shall remain, as it now is, vested and to be used for the carrying on of my said milling business, for one whole year from this date; and, if I shall think it most for the interest of the parties concerned, to remain so during the continuance of my lease upon said mill, which now has about three years to run." It was made the duty of the trustee, at the end of one year from the date, and at the end of every year thereafter, during the continuance of the milling business, to demand an account of said milling business, showing profits and losses; and at every such demand, there should be paid to the trustee, half of all the property made. At the end of the term, the capital stock and property then on hand, whether consisting of the same identical things used at the date of the deed, or others substituted therefor in the course of business, and whether of greater or less value, should be divided equally; one half to be delivered to the trustee, to be by him applied for the benefit of said Mrs. Marks and her children.

It was the duty of the trustee, upon the receipt of money or property, by virtue of the said deed, to pay and deliver the same to Mrs. Marks, to be by her employed as she might judge best for the interest of herself and her children. If any property or money remained after the death of Mrs. Marks, it was to be divided among the remaining children, in equal shares. The deed also contained a clause conveying to the trustee two promissory notes, due by Mr. D. Marks to other

persons, which had been assigned by the payees to Bacon, and also a clause transferring a pew in a church to the trustee. These notes and the pew were conveyed to the trustee, to be by him disposed of according to his best discretion, for the sole use and benefit of said Mrs. Marks and her children.

After this deed had been made and recorded, Alexander took upon himself the trust, and by his deed, dated July 2d, 1847, signed by him and by Amira M. Marks, and Luther C. Clark, the plaintiff, the said Alexander conveyed the property mentioned in the deed from Bacon to him, that is, the trust property and the profits arising thereon, to the said Clark, for the benefit of Mrs. Amira M. Marks and her children.

This last deed recites, that the trust property and money, now in the hands of said Alexander, amount to thirteen thousand eight hundred and seventy-three dollars ; and that the milling business had terminated ; and that the trust property and money were required by said deed from Bacon to Alexander, to be paid to the said Mrs. Marks, to be employed under her direction for the benefit of herself and children. And, " whereas, the said Amira M. Marks has directed that the said trust property and money should be delivered and paid over to Luther C. Clark, of St. Louis, to be held by him as trustee, for the benefit of herself and her children, and to be used and employed as she may direct," &c., the said Alexander did, thereby, with the consent of said Amira M. Marks, sell and convey the same, in trust, to said Clark, &c.

Clark made Dennis Marks his attorney in fact, or rather his agent, to attend to the management of the trust fund. This was done by the direction of Mrs. Marks.

The defendant, Maguire, having, before the deed from Bacon to Alexander, obtained judgments against Marks for a considerable amount, directed the sheriff to levy on the property, which Dennis Marks, as agent for Clark, was attending to and managing, that is, the trust property, and had the same sold to satisfy his debt. The property was seized and sold by order of Maguire, as the property of Dennis Marks.

This suit is brought to recover damages for the trespass committed. The plaintiff was nonsuited below, upon an instruction given by the court to the jury, that from the evidence of the case, he, the plaintiff, was not entitled to recover.

1. The only possible view, by which this instruction can be defended, depends on the meaning and construction of the deeds from Bacon to Alexander, and from Alexander to Clark. It seems that there can be no pretence by which the husband, Dennis Marks, can be declared to have any marital rights in the property first conveyed by Bacon to Alexander, that is, the stock in the mill at the time of the deed, amounting to eight thousand eight hundred and seventy-two dollars, half of which was conveyed to Alexander, as trustee, for the sole use of Mrs. Marks and her children. Nor is there any pretence that he has any right or property in the proceeds of the two promissory notes and the church pew. These were also conveyed for the sole benefit of Mrs. Marks and her children. But to the profits arising from the property conveyed, although the property itself be expressly conveyed for the sole use of Mrs. Marks and her children, it is contended, and strenuously contended, that the marital rights of the husband attach, and that these profits can be sold, under execution, in favor of the husband's creditor.

This construction is given to the deed, because the profits are mentioned therein, and directed thereby, to be applied for the benefit of Mrs. Marks and her children — omitting the words "sole use." Now, it is generally admitted, that the incident will follow the principle. If there had been no mention made of the profits arising from the one half of the "mill stock," in this case, conveyed to the trustees for the sole use of Mrs. Marks and her children, could there have been a doubt to whom these profits would go? Would any one have thought the husband of Mrs. Marks had any right or title to such profits?

We must look to the intention of the parties. Here it is obvious, that Bacon supposed that he could do more for his sister,

by conveying one half of a profitable mill establishment to a trustee, for her and her children, than by giving so much money, to be put at interest, or otherwise employed as producing capital ; therefore he conveys one half of this mill for the sole benefit of herself and her children, to a trustee, expressly stating, that if the business turns out properly, he would continue it for three years. Was it not the design of the grantor that these profits and increase should be for the sole benefit of his sister and her children? Was it not manifest, that his intention was to make her comfortable and independent? Her husband had failed ; it was not to enable him to pay his debts that this conveyance was made. Nor were the profits arising from the trust fund to be so liable. From the whole deed from Bacon to Alexander, I am at a loss how it could ever have been thought that these profits were for Marks' creditors, although the fund producing them was solely for the benefit of the wife and children. There is no clause conveying the profits arising from this fund, in any way or manner different from that in which the fund itself is conveyed. The deed requires the trustee to demand a settlement at the end of the year ; to receive the profits, and to pay them to Mrs. Marks, that she may employ them as she may think best for herself and her children. Now, because the words " sole use and benefit," or " sole benefit," or " sole use," of herself and children are omitted, therefore the money, when received from this fund which was for the sole benefit of herself and children, shall not be for the benefit of herself and children, but shall be taken away and applied to pay debts of her husband.

We must look at things as they are, and construe words and instruments, according to the meaning and intent of the parties, as manifested thereby.

There is nothing, then, in the deed from Bacon to Alexander, warranting the construction contended for by the defendant below.

2. The deed from Alexander to Clark must be construed with an eye to the deed from Bacon to him. Alexander has no

power to change or alter the use of the trust fund. His deed to Clark was nothing more than changing the tru tee and putting Clark, at the request of Mrs. Marks, in the management of the trust fund. No change of this fund was designed by him. He refers to the original deed to him from Bacon, and transfers the legal title in the fund to Clark, as the future manager thereof, for Mrs. Marks and her children.

It has been said by the plaintiff's counsel, that, even if the second deed did not formally declare the trusts of the first deed, so as to exclude the creditors of the husband, still the property was held by Clark, the plaintiff, under the trust of the first deed ; for it was not competent for Alexander to change the trusts of the original donor. The creditor was permitted by the court below to hold the property, on the ground that the second deed did not, in terms, exclude the marital rights. This was error in the court below ; for, as that court was dealing with merely equitable rights, it was bound by the rules of equity ; and in a court of equity, this property would be bound by the trusts impressed upon it by the donor in the original deed. I accord with this view.

3. The case cited by the defendant's counsel, from 4 Madd. Ch. R. 409, *Wills* v. *Sayers*, is different from this. There the Vice Chancellor used one phrase in the will, in which a donation was couched, in order to arrive at the intention of the testator in another donation couched in different terms. The testator gave, by will, £750, three per cent. stock, upon trust, to apply £600 stock and the dividends, for the sole and separate use and benefit of his daughter, the plaintiff, Mary Wills, and her receipts were to be sufficient discharges for the same ; and £150 stock, the residue of the said £750, for the use of his grand children, M. Wills, O. K. Wills, and J. M. Wills, at such times and in such manner as the plaintiff, Mary Wills, should direct. And he bequeathed all his household and other goods, plate, &c., not otherwise disposed of, after payment of debts, &c., unto the plaintiff, for her own use and benefit.

The question was, whether the words " for her own use and

benefit," used in the residuary bequest, gave the plaintiff a separate estate. The Vice Chancellor said : "In equity, as at law, a gift to the wife is a gift to the husband, who being bound to maintain the wife, is entitled to her property. A court of equity, however, will execute the trust for the sole and separate use of the wife, when the intention of the donor to that effect is unequivocally declared. A gift to the wife, for her use, is no declaration of such an intention, and it is difficult to find any substantial distinction between a gift to a wife, for her use, and a gift to a wife for her own use. But, if such a distinction could prevail in another case, it could not govern this. Here the testator, as to the same person with respect to another gift, has appointed a trustee, and expressly directed the application of it to her sole and separate use ; he knew, therefore, the technical form of excluding the right of the husband, and I cannot infer that, as to this legacy, he intended what he has not expressed."

Now, from this, the intention of the donor was the great point to be found, and that was to be carried out.

In the case before the court, this very intention is sought to be defeated, although it is unequivocal and manifest, by a hair-spun, technical construction of the instrument. In construing such a deed as this, the sympathies of our nature must become very cold, before we can be induced to destroy such manifest intention by a mere technicality.

In a gift or bequest to a married woman, after marriage, the words, that she is to have the property " to her sole use or disposal," or " to her separate use or disposal," or " for her own use and at her own disposal," or " to her own use during her life, independent of her husband," or " that she shall enjoy and receive the issues and profits," or that it is an allowance as or for " pin money," *eo nomine*, will exclude the marital rights of the husband, and the property will be for her exclusive use. Stor. Eq. section 1382.

In *Stanton* v. *Hall*, 2 Rus. & Mylne, 175, (6 vol. Condensed Eng. Ch. Rep. 448,) the Lord Chancellor said, " it was

clear that no particular form of words was necessary, in order to vest property in a married woman, to her separate use. That intention, although not expressed in terms, might still be inferred from the nature of the proviso annexed to the gift; as where, for example, the direction was, that the property should be at the wife's own disposal, or that her receipts should be a good discharge; circumstances which raised a manifest implication that the marital right was meant to be excluded." I deem it unnecessary to review the various cases referred to by the counsel, as I am compelled, without the least hesitation, to state, that I cannot see how it could be doubted, in this case, that the rights of the husband never did attach. This whole transaction plainly points us to this conclusion. The husband had failed; the generosity of the brother stepped in to relieve his sister, the wife of that husband. The brother says that he has no doubt he can best provide for the comfort and independence of his sister, by setting apart a portion of his mill establishment, and the profits thereof, for her and her children; and in order to carry into effect this determination on the part of the brother, he conveys to a trustee the half of the mill establishment and stock on hand, worth upwards of four thousand dollars, for the sole benefit of this sister and her infant children; with directions to the trustee, to receive the yearly profits and pay the money to Mrs. Marks, (his sister,) for her own and her childrens' use and benefit.

The whole object was, to provide for the sister and her infants, and to do this, without even permitting her husband to have any rights or interest in the trust fund.

The evidence shows that the plaintiff had the legal title and right in and to the property seized and sold by the sheriff, at the order and under the directions of the defendant, Maguire. There was nothing to prevent his recovery. The instruction, therefore, given to the jury, that the plaintiff was not entitled to recover, is erroneous. The judgment below must be reversed, and this cause remanded for further trial, Judge Scott concurring herein. Judge Gamble, having been of counsel in the court below, did not sit in the cause.