Richardson v. De Giverville.

RICHARDSON, *Appellant,* v. DE GIVERVILLE *et al.*

DIVISION ONE:

1. **Realty :** CONVEYANCE BY HUSBAND AND WIFE. A married woman can convey her real property which is not her separate estate only by a deed jointly executed by herself and her husband, and her sole contract for its sale is not binding.

2. ——— : ——— : SEPARATE ESTATE. Where, however, such property is held to her sole and separate use, it is her separate estate in equity, and she can convey it by deed without her husband joining therein, and a contract made by her for its sale may be specifically enforced.

3. ——— : ANTENUPTIAL CONTRACT : CONFLICT OF LAWS. An antenuptial contract entered into in France under the Code Napoleon with reference to the community of property excluded the property then owned from the community and provided that on the wife's death the husband should have, during his life, the whole of the income arising from all the property then owned by her, or in case of children living of the marriage half of such income, but contained no agreement that the real estate of the wife should remain her sole estate free from the control of her husband. *Held* that such agreement did not secure to the wife a separate estate in her real estate owned by her in Missouri at the time of the marriage, as an intent to exclude the common-law rights of the husband did not clearly appear therefrom.

4. **Separate Estate :** TRUSTEE. The intervention of a trustee is not necessary to the creation of a separate estate.

5. ——— : ———. While no special or technical words are necessary to create a married woman's separate estate, the intent to exclude the husband's common-law rights must be clearly expressed.

6. **Contract :** LEX SITUS : LAW AS TO PERSONALTY. The law of the *situs* controls as to questions relating to the right and title to realty, but a contract concerning personalty should ordinarily be construed according to the laws of the country with reference to which it was made.

7. **Antenuptial Contract**: CONFLICT OF LAWS. An antenuptial contract entered into in France with reference to the community of property under the Code Napoleon in so far as it relates to personalty will be construed according to the law of France, but, as to real property owned in Missouri at the time of the making of the contract, it will be construed by the law of Missouri.

8. —— : ——. Where under such contract as construed by the Code Napoleon the husband would have the right to manage real estate owned by the wife in Missouri at the time of her marriage and to take the income to sustain the expenses of the marriage, and, to enable the wife to sell, she must have his special consent, she has no separate estate therein under the laws of Missouri.

*Appeal from St. Louis City Circuit Court.*—HON. G. W. LUBKE, Judge.

AFFIRMED.

*Reynolds & Lewis* and *L. F. Parker* for appellant.

(1) The execution of the antenuptial contract was sufficient in form to sustain it under the statute and in equity, and will be held to be good as between the parties. No objection was made to its introduction, and the rights of no third parties had intervened. *Logan v. Phillips*, 18 Mo. 22; *Wilkinson v. Rozier*, 19 Mo. 443; *Lemay v. Poupenez*, 35 Mo. 71; *McClurg v. Phillips*, 57 Mo. 214; *Harrington v. Fortner*, 58 Mo. 468; *Klenke v. Koeltze*, 75 Mo. 239; 1 Pomeroy Eq. Jur., secs. 378, 380. (2) The antenuptial contract created, as to the property then owned and possessed by respondent, a separate estate in her. *Picotte v. Cooley*, 10 Mo. 312; *Childress v. Cutter*, 16 Mo. 24; *Clark v. McGuire*, 16 Mo. 302; *Cutter v. Waddingham*, 22 Mo. 206; *Beal v. Morgner*, 46 Mo. 48; *Miller v. Dunn*, 62 Mo. 216; *Klenke v. Koeltze*, 75 Mo. 239; 1 Pomeroy Eq. Jur., sec. 503; 3 Pomeroy Eq. Jur., sec. 1101. (3) The right of the wife to dispose of her separate property without joining her husband is absolute, and specific performance can be decreed against her. *Turner v. Shaw*, 96 Mo. 22; Waterman on Spec. Perf.,

sec. 66, p. 93; 3 Pomeroy's Eq. Jur., sec. 1104; *Kimm v. Weippert*, 46 Mo. 532; Snell's Eq., secs. 321, 322. (4) This case is not one in which any such laches appear as to bar plaintiff's right to maintain this action. 3 Pomeroy's Eq. Jur., sec. 1408; *Stiger v. Bent*, S. C. Ill; *Spurlock v. Sproule*, 72 Mo. 511; *Bliss v. Prichard*, 67 Mo. 181.

*Boyle, Adams & McKeighan* for respondents.

(1) The land in controversy was not the separate equitable estate of the respondent. *Gwin v. Smur*, 101 Mo. 550; *Rush v. Brown*, 101 Mo. 556. (2) A sheriff's deed which was never expressly required to be under seal has always been held to be affected by our statutory provision (R. S. 1889, secs. 6853, 2388), and so the court has uniformly held that a deed in order to become effectual and valid, whether made by a sheriff in his official capacity or a private person in his or her own right, must be under seal to affect real estate. *Grimsley v. Adm'rs*, 5 Mo. 280; *Walker v. Keith*, 8 Mo. 301; *Moreau v. Detchemendy*, 18 Mo. 522; s. c., 41 Mo. 431. And it is held that seals on bonds and deeds never have been dispensed with in this state, except as the statute dispenses with them and substitutes a scroll. *State ex rel. v. Thompson*, 49 Mo. 188. Under these statutes it has been held in the cases cited, that in order for an instrument to be sealed it must express on its face to be sealed, and the signer must affix a scroll to his name by way of a seal, or it must be in fact sealed. (3) The antenuptial contract like all other contracts must be constructed with reference to personal property by the *lex loci contractu*, but in case of the real estate by the *lex loci rei sitæ*. 2 Parsons on Contracts [6 Ed.] and cases cited; *Thomas v. Watkins*, 2 Ves. 35; *Holmes v. Remser*, 4 Johns. Ch.; *Harvey v. Belard*, 1 Mason, 412; *United States v. Crosby*, 7 Cranch, 115; *Horford v. Nichols*, 1 Paige, 220; *Willis*

*v. Cowper*, 9 Wheat. 565 ; *McCormick v. Sublint*, 10 Wheat. 192 ; *Darby v. Mayer*, 10 Wheat. 465 ; *Depas v. Mayo*, 11 Mo. 314, 318. Where an antenuptial contract is made in one state to have effect in another it must be governed by the laws of the latter. *Succession of Jesse Wilder*, 22 La. Ann. 219. (4) Under the decisions and the law governing equitable separate estates, and the exclusion of all the marital rights of the husband in the wife's landed property, no separate estate was established or created by this marriage contract in the respondent as to the land in question, or any other land, nor can the Code Napoleon be used as a part of the contract to aid in the establishment of such an estate, nor if it could be used for such purpose would it affect such object, but rather the contrary. 1 Bishop on Married Women, secs. 824, 830, 795, 800 ; *Garner v. Jones*, 52 Mo. 68 ; *Bank v. Collins*, 75 Mo. 280; *Edwards v. Burns*, 26 Mo. App. 119 ; *Beal v. Morgner*, 46 Mo. 48 ; *Schaffert v. Ambs*, 46 Mo. 380 ; *Bank v. Taylor*, 53 Mo. 444 ; *Trennell v. Kleiboldt*, 75 Mo. 255 ; *Soltan v. Soltan*, 93 Mo. 207; *Besse v. Pellochoux*, 73 Ill. 285 ; *Childers v. Cutler*, 16 Mo. 24 ; 1 Bouvier, 305 ; *Dillonborough v. Wisberg*, 10 Mo. App. 465 ; *Sloan v. Terry*, 78 Mo. 626 ; *Hart v. Leete*, 104 Mo. 315. (5) Under the facts and circumstances of this case there was a mutual abandonment of the contract in question, and, if not, such laches by appellant, as precludes him from his right to enforce in equity any contract which may have existed for the conveyance of the land in controversy. *Veith v. Gierth*, 92 Mo. 97 ; *Bank v. Bowman*, 61 Mo. 76 ; *Langley v. King*, 93 Mo. 513 ; *Broshner v. Grotzh*, 6 Wheat. 529. (6) The respondent and her husband were in possession at the time the suit was brought, long before, and afterwards, of the land in controversy, and a decree was properly granted removing the cloud of title cast upon the land by the recording of the receipt in controversy. *Lackland v. Nevins*, 3 Mo. App. 335 ; *Harrington v. Mehrback*, 57 Mo. 519; *Church v. Hintze*, 72 Mo. 363.

BLACK, J.—Plaintiff Richardson brought this suit against Madam De Giverville and her husband to enforce the specific performance of a written contract executed by her, while a married woman, by Mr. Bailey, her agent, for the sale of fifty acres of land in the limits of St. Louis, to the plaintiff. The petition states that Madam De Giverville owned and held the property as her sole and separate estate. The defendants deny this averment and say she was seized of and held the property as her general estate, subject to the marital rights of her husband, and for this reason the contract is invalid. They aver that the contract, which had been recorded, constitutes a cloud upon their title, and ask that it be set aside and canceled. The circuit court found the issues for the defendants, dismissed the plaintiff's petition, and gave judgment as prayed for in the answer.

The following are the essential facts, stated in the order of time in which they occurred: James W. Kingsbury by his will, which was probated in St. Louis in 1853, devised the land in suit and other lands to his son and two daughters. One of these daughters who is the real defendant in this case, and her codefendant, Armand Francois Robert, Count of Giverville, married in France in 1865. Preparatory thereto they executed a marriage contract. If Madam De Giverville has a separate estate in the property in question she has it by force and effect of this antenuptial contract.

The contract was executed in France before a notary public, bears date October 25, 1865, is signed by the parties, but not under their seals. Omitting formal and immaterial parts it is as follows:

" Article I.—The future conjoints adopt the community of goods as the basis of their civil marriage, such as it is established by the ' Code Napoleon ;' they covenant, however, that this community shall be limited to the acquisitions of real and personal estate which they

may make during their marriage ; accordingly, the same community from which is excluded all the present estate of the future conjoints, and that which may fall to them in their own right in the future, shall be governed ( except what shall be hereafter stipulated ) by the dispositions of the articles 1498 and 1499 of the 'Code Napoleon.'

"Article II.—Each conjoint shall be entitled to one half or moiety of the benefits of the community of acquisitions above mentioned. It is, however, stipulated as it is allowed by the article 1525 of the 'Code Napoleon,' that the surviving conjoint shall be entitled to the usufruct, during his lifetime, of the portion of the real and personal estate which shall come to the conjoint first dying in the community : Provided, however, that there shall be no living children of said intended marriage; for otherwise the surviving conjoint shall be entitled to the usufruct only of one-half of that portion. To enjoy the usufruct which shall come to him, in either of the said events, the surviving conjoint shall not be obliged either to give security or to invest the money coming from or give adequate substitute for the personal estate, but he shall cause an inventory thereof to be made."

By the third and fourth articles the parties make a general declaration of the property, real and personal, which they each bring to the marriage, with a value fixed upon the personal property.

"Article V.—At the dissolution of the marriage or of the community of acquisitions, each one of the conjoints shall retake what belongs to him or her in his or her own right as he or she is entitled to. It is covenanted, however, that each of them or their heirs shall retake personal property of the same nature and kind as that brought in the community by each of them, according to the appraisement thereof, and to an amount equal to the sum they shall be entitled to deduct from the community.

"Article VI and last one.: Lastly, the future con-
joints mutually grant and make over to each of them, as
a gift, and to the benefit of the survivor of them (which
gift they respectively accept), the usufruct, during the
life of said survivor, of all the personal and real estate,
without exception, which the one first dying shall have
at the time of his death, and which shall come from his
succession.   In case there shall be any living children
or child of the intended marriage, this gift shall be
limited to the usufruct of one-half or moiety of the same
real and personal estate.   To enjoy the usufruct which
shall come to him in either of the said events, the sur-
vivor shall not be obliged either to give security or to
invest the money coming from, or give adequate substi-
tute for, the personal property, but he shall cause an
inventory thereof to be made.   This donation shall not
prejudice in any manner the convention stipulated in
article second concerning the property coming from
acquisitions."

Count and Madam De Giverville came to the United
States in 1872, and have resided in St. Louis since that
time.   She acquired the property in question in sever-
alty by virtue of a partition deed executed in 1874 by
her and her sister and their husbands, the brother hav-
ing died before that date.

While the Count was in France on a visit, his wife
placed the property in suit in the hands of Mr. Bailey,
a real-estate agent, for sale ; and he sold the same to the
plaintiff at $300 per acre.   Bailey at the time, as the
agent of Madam De Giverville, and not as the agent of
her husband, gave the plaintiff a writing, dated June
27, 1885, in the form of a receipt, acknowledging the
payment of $100, as part of the purchase price, and
stating the terms of the sale.   This is the contract which
the plaintiff seeks to enforce by this suit.   It appears
Judge GANTT held a power of attorney to transact busi-
ness for Count De Giverville, but there was doubt as to
whether it gave him authority to execute a deed, hence

the transaction stood unclosed until Count De Giverville returned, which was less than a month after the date of the contract. He declined to join his wife in a deed to the plaintiff, insisting that the property was worth $400 per acre. Subsequently and in April, 1886, Bailey acknowledged the execution of the contract before a notary public, and the plaintiff then caused the same to be recorded in the records of land titles. The abstract of title procured by the plaintiff, at the time he purchased the property through Bailey, did not disclose the marriage contract. The abstractor overlooked it, though it had been duly recorded in St. Louis. About a year and a half after the date of the contract of sale, the plaintiff for the first time discovered and received actual notice of the existence of the marriage contract, and within four or five months thereafter he commenced this suit. In the meantime the property had increased in value, so that when this suit was commenced it had a market value of more than twice that specified in the contract upon which this suit is founded.

1. If Madam De Giverville was seized of and held this property as her general estate, then she could only convey it by a deed jointly executed by herself and husband, and her contract for the sale of it is invalid, both at law and in equity. If, however, she held the property to her sole and separate use free from the control of her husband, then it was her separate estate in equity; and she could convey it by her deed without her husband joining therein, and a contract made by her for the sale of it may be specifically enforced by a court of equity. Assuming for the present that the antenuptial contract was executed in due form, the question arises whether it secured to her a separate estate in the property in question. The plaintiff must sustain the affirmation of this question before he has any standing to enforce the contract.

By the first article of the contract the parties adopt the community of goods, as established by the Code

Napoleon; but they in express terms limit this community of property to acquisitions, made during the marriage. From this community they, in emphatic terms, excluded the property then held by each of them. The real estate now in question and then owned by Miss Kingsbury did not enter into or constitute any part of the community property. Articles 2 and 5 relate alone to community property, and articles 3 and 4 are simply declarations of property held by each at the marriage, and were proper provisions to prevent the movables from falling into the community property. It is an interesting inquiry to follow out the incidents attached to this community or partnership, but such an inquiry can subserve no purpose in this case; for the real estate in question was, by the contract, excluded therefrom.

The only articles of the contract which have any direct bearing upon this question at issue are the first and sixth. The first, as has been said, excludes the property then owned by the parties from the community, and hence excludes from the community the real property now in question. By the sixth article the parties made over, each to the survivor, the usufruct, during the life of the survivor, of all real and personal property which the one first dying shall have at the time of his or her death and of that which shall come to him or her by succession. The survivor to enjoy the usufruct during life without being obliged to give security for the principal of the personal property. The usufruct to be limited to one-half in case there be any living children at such death. The substance then of this entire agreement, so far as it relates to this Missouri real estate, is this: It is not community property. Should the wife die first, then the husband is entitled to the income thereof during his life, subject to the provision concerning children. There is no agreement whatever as to the right of the husband in or to this property of the wife during the existence of the marriage. His rights during that time are left to the law

for determination; and the law which determines his rights during the marriage is the law of Missouri and not the Code Napoleon. The contract then resolves itself into this, the parties make no agreement that the real estate belonging to the wife shall remain her sole estate, free from the contract of her husband; but they do agree that at her death he shall, during his life, have the whole or the half of the income arising therefrom, according as there may or may not be children living of the marriage. Does such an agreement secure to the wife a separate estate, as understood by our laws? This question must be answered by ascertaining what words are sufficient to create such an estate.

It is now well settled that the intervention of a trustee is not necessary to the creation of a separate estate. *Schafroth v. Ambs*, 46 Mo. 114. Such an estate may be secured to the wife by a marriage settlement. 2 Story Eq., sec. 1382. The words generally used are, "to her sole and separate use;" but as said in *Beal, Adm'r, v. Morgner*, 46 Mo. 48, "no special or technical words are required, but any provision that negatives or excludes the marital rights of the husband, while giving the property to the use of the wife, should be held to create in her a separate estate. Though the words 'separate use' or 'sole use' are usually employed; yet, if the same intention is clearly expressed by other terms or provisions of the instrument, such words are not necessary." See also *Clark v. McGuire*, 16 Mo. 302; *Metropolitan Bank v. Taylor*, 53 Mo. 444; *Boatmen's Savings Bank v. Collins*, 75 Mo. 280. Any words which negative or exclude the marital rights of the husband will be sufficient. On the other hand the marital rights of the husband to the property of his wife will not be excluded by mere conjectures. The intent to exclude his common-law rights must be clearly expressed. A necessary implication will be sufficient; but the purpose to create a separate estate must clearly appear. *Hart v. Leete*, 104 Mo. 315. In the case last mentioned the testator

devised and bequeathed to each of his two daughters "one-fifth of my estate, real and personal, in their own rights," and we held the will did not create a separate estate. The purpose to create a separate estate must clearly appear beyond a reasonable doubt; otherwise the husband will retain his ordinary legal and marital rights over the property. 2 Story Eq., sec. 1381.

Applying these rules to the marriage contract in question it cannot be said that it creates in the wife a separate estate. The only thing from which such an inference can be drawn is the fact that the husband is given the income arising from the property during his life after her death. It may be conjectured that by this provision the parties designed to exclude any interference or control on his part during the existence of the marriage relation; but it is a mere conjecture. There is certainly no expressed intention to exclude his common-law marital rights or to create a separate estate in her, nor is such an intention necessarily implied. It must, therefore, be held that Madam De Giverville had no separate estate in the property in question.

2. But it is urged, as against the conclusion just stated, that we must construe this agreement in the light of the French laws, not, it is said, for the purpose of enforcing these laws here, but for the purpose of ascertaining the real intention of the parties, and of them giving force and effect to that intention. There can be no doubt but this agreement was entered into in France with reference to the Code Napoleon, and so far as it relates to movable property, or, as we would say, personal property, the same effect would be given to it here that would be given to it by the tribunals of France. *Crosby v. Burger*, 3 Ed. Ch. Rep. 567. There are, of course, exceptions to this rule, as where the contract violates good morals, or is against public policy, or is repugnant to our laws.

In *Britan v. Miles*, 8 Paige Ch. Rep. 261, natives of France, resident in this country, made a marriage

contract with reference to the French law of community. They intended to return to that country, and so stated in the agreement, but did not do so. It was held that the contract should be construed and enforced according to the laws of France with reference to which it was made, the property in question being personal property. But it must be remembered that we are now dealing with real estate owned by Miss Kingsbury at the date of the marriage contract. The law is well settled that a title to, or interest in, lands must be acquired according to the law of the place where the lands are situated. It is that law which determines the force and effect of the instrument, be it a deed, will or contract. *Keith v. Keith*, 97 Mo. 224. So, too, where the deed or other instrument relates to immovables, or what the common law calls real property, it must be construed according to the law of the place where the property is situated, or the *lex loci rei citæ.* 2 Parsons on Contracts [ 5 Ed.] 571.

The common law, says Story, declares that the law of the situs shall exclusively govern in regard to all rights, interests and titles in and to immovable property. Story on Con. of Laws, secs. 428, 463. It follows from what has been said that, so far as concerns the real property situated in this state, and owned by Miss Kingsbury at the date of the antenuptial contract, we must take the contract as it is expressed on its face, and construe and apply it according to the laws of this state. As respects this property we have nothing to do with the French law. As to this real estate the parties are to be deemed as having contracted in reference to the laws of this state.

3. But if we could incorporate the Code Napoleon into this contract and use it as evidence of the intention of the parties, still Madam De Giverville would not have a separate estate in this property, as that estate is known to our law. This, we think, must appear by bringing together several articles of that code. This

we now do by stating the substance of some of them, and by giving others in the language of the translation before us.

The law, says the French code, does not regulate the conjugal association as respects property, except in default of special agreement. Art. 1387. Community is established by the simple declaration of the parties that they marry under the law of community, and it is the law in the absence of any contract. Art. 1400. The community thus established seems to embrace all property of the parties, except immovables owned at the marriage or thereafter acquired by succession. Arts. 1401, 1404. The community may be modified in many ways by special marriage agreement. Among others, the parties may stipulate for a community of acquisitions only, as was done in the case now in hand, and then they are deemed to exclude from the community the debts of each, existing and future, and movables, present and future. Art. 1498. Parties may, without submitting the conditions of dower, declare that they marry without community, or that they will be separate in property. Art. 1529. "The article importing that the parties marry without community does not confer upon the wife a right to administer her property, nor to enjoy the fruits thereof; such fruits are deemed to have been given to the husband to sustain the expense of marriage." Art. 1530. "When the parties have stipulated by their marriage contract that they will be separate in goods, the wife retains the entire management of her property, movable and immovable, and the free enjoyment of her revenues." Art. 1536. In no case, nor by virtue of any stipulation, can the wife alienate her immovables without the special consent of her husband, or, upon his refusal, without being authorized by the court." Art. 1538.

There is, it will be seen, a manifest difference between those cases where the parties marry without community, and where by marriage contract they agree

to be separate in goods.    In the former case the wife does not enjoy the fruits of her property, but they go to the husband to sustain the expenses of marriage. In the latter case the wife retains the management of her property, both real and personal, and has the free enjoyment of the revenues.    But in either case, to alienate her real property, she must have the consent of her husband or authority from the court.    Now, as has been said, the parties here by their contract married under the law of community of acquisitions only, and thereby excluded from the community property the real and personal property which they owned at the marriage.    They have not stipulated that they would be separate in goods ; so that the property then owned by them simply stands without community.    As to the real estate in question the husband would have the right to manage the same and take the income to sustain the expenses of the marriage ; and to enable the wife to sell it she must have his special consent.

These powers in the husband are at war with the rights of a married woman to her separate estate, as that estate is known to our laws.    Being the owner of a separate estate under our laws, she receives the income and disposes of it as she sees fit ; and she may also sell the property and convey the same by her own deed.    As to such property she is a *feme sole* in a court of equity.    It results from the foregoing considerations that, if we give to Madam De Giverville all the rights to and powers over this real estate that she would have under the French laws, still she has no such estate therein as answers to our married women's separate estate.

4.    The defendants place some reliance upon the fact that the antenuptial contract is not under seal, and they also insist that the plaintiff should fail on the ground of *laches* in the institution of this suit ; but in view of what has been said it is unnecessary to consider

these questions. In what has been said we have assumed, for the purpose of this case, that they should be resolved for the plaintiff. The judgment is affirmed. BARCLAY, J., not sitting ; the other judges concur.