## DOSS *et al. vs.* CAMPBELL.

1. The laws of the State in which a marriage is celebrated govern the rights of each party to the property of the other, and their subsequent removal to another State only affects property afterwards acquired.

2. Therefore, where a marriage was celebrated in Texas, by the laws of which the husband acquires no interest in his wife's property by the marriage, the subsequent removal of the parties with their property to this State does not subject the wife's property to the husband's debts.

ERROR to the Circuit Court of Dallas. Tried before the Hon. Geo. Goldthwaite.

CAMPBELL, for plaintiff in error:

We contend that the *lex rei sitæ,* and not the *lex loci contractus,* must govern.

Giving operation to a foreign law, rests in mere comity. All that relates to the remedy must be determined by the *lex fori.* Pickering v. Fisk, 6 Ver. 102; 2 U. S. Dig. 437, § 24.

The distinction between real and personal actions at civil law, is taken and exemplified in Saul v. His Creditors, 3 La. 585; Story's Confl. of Laws, § 157; Lord Eldon's Doctrine, cited by Story, (Confl. of L., § 171,) see also § 174.

The idea of tacit contract, is that upon which the prevailing of the law of the matrimonial domicil is founded. This idea is repudiated by the Supreme Court of Louisiana.—See Saul v. His Creditors, 17 Martin's La. 599; Story's Confl. of L., § 157; Ib. 148; 17 Martin's La. 569-603-605; Story's Confl. of L., § 190;

Dickson v. Dickson, 4 La. 190; Selrigg v. Davis, 2 Rose's B'k Cases, 99; Lashley v. Hogge, Robinson's Appeal Cases, 160; Royal B'k of Scotland v. Smith, 1 Rose's App. C., Appen. 181.

It may be admitted, (says Mr. Story's Confl. of L., § 145, A,) that the rights dependent upon nuptial contracts are to be governed by the *lex loci contractus*. This may be generally correct in regard to cases of express or implied contracts, and that no other were probably in the mind of Chancellor Kent at the time he gave the decision.—De Couche v. Savetier, 3 Johns Ch. 211; Story's Confl. of L., § 145, A.

The personal laws of one country cannot control the personal laws of another, *ipso facto*. No one can doubt that any country has a right to say that contracts for community made in another country shall have no operation in its own territory. The question then is reduced to the mere consideration, whether the law of the country does directly or indirectly provide for or repudiate the community of property locally situated within it.—Story's Confl. of L., § 175; Ib., § 176; Ib., §§ 33-4-278.

If a husband by the law of his domicil has his wife subject to his control, and changes his domicil to a place where it does not exist, or *e contra*, if he changes his domicil from a place where the wife is exempt from the matrimonial power, to one where it exists, in such case the wife has the capacity or incapacity of the new domicil.—Story's Confl. of L., § 131; Lashley v. Hogge, Rob. App. Cas. 160; Selrigg v. Davis, 2 Rose's B'k Cases, 99.

GAYLE, *contra* :

1. There is no difference between a marriage settlement by deed, and a contract of marriage created by law. The object of each would be to settle the property on the wife to her separate use. If the contract in question were by deed made in Texas, the property would be protected here.—See Peake v. Yeldell, 17 Ala. 636.

2. Under the tacit contract, the title is vested in the wife, to her separate use. In Texas, it was the wife's property in fee, and not to be charged by the husband. Can a wife's rights, so important as these, be divested by following her husband, as she is bound to do, into another State?

3. The doctrine contended for applies to real estate, but not to moveables.—See Gale v. Davis, 4 Martin, 649.; see Story's

Confl. of L., 200, §§ 186-240-2; 2 Kent's Com. 453-4-7; 14 Conn. 583.

4. But, independent of our statute, the principle settled by Story and Kent, *supra*, has been recognized by our court, in cases analogous in principle. Our court, in enforcing contracts made in other States, apply the statute of limitations in other States—the tacit contract of the parties.—See Goodman v. Monks, 8 Por. 84.

These decisions must be overturned to arrive at the conclusion contended for by plaintiffs in error in this case.

DARGAN, C. J.—The slaves in controversy belonged to the wife of the claimant before their intermarriage; they resided in Texas at the time of the marriage, and the wife had the slaves in her possession; they afterwards removed to Alabama, bringing the slaves with them; the husband being in possession of the slaves, they were levied on in this State, to satisfy a debt owing by him. It was also shown, that by the laws of Texas the husband acquired no title to the property of the wife, in consequence of his marriage, but that she retained it to herself as her separate property. Upon these facts, the question arises, whether the slaves are liable to the debts of the husband.

We do not deem it necessary to enter into the discussion of the intricate question between real and personal statutes, nor the influence the act of the Legislature of Texas would have on the rights of the husband, if it be considered in the one light or the other. For, in our opinion, without regard to the character of that statute, (that is, whether it be considered as a real or personal statute,) the plain and simple rule is this, the *lex loci contractus* must govern, not only as to the validity of the marriage itself, but also in ascertaining the rights which each party takes in the property of the other and which either owned at the time of the marriage. But if they remove to another country or State, and there acquire property, the rights of each to such property, acquired after the removal, must be governed by the laws of their newly acquired home. Thus, if parties are married in a country where the common law prevails, the husband by virtue of the marriage acquires title to all the personal property of the wife which she had in possession at the time of the marriage, and their subsequent removal to a country where the

civil law prevails, will not re-invest her with a right to any portion of it, but all the property acquired subsequent to their removal will be governed by the laws of their newly acquired domicil; and she will take the same interest therein as if the marriage had been there celebrated. So, on the contrary, if they were married in a country where the civil law prevails, and afterwards remove to a State governed by the common law, the common law will regulate their future conduct and future acquisitions; but the removal will not alter the rights of either to property *then* in possession, the title to which had vested under the civil law. This is the rule recognized in the case of Gayle v. Davis' Heirs, 4 Martin's La. 645; nor is there any thing inconsistent with this principle, in the case of Saul v. His Creditors, 3 Cond. La. 563. Judge Story, in treating of these two decisions, considers that they *recognize this rule:* " where there is no express nuptial contract, the law of the matrimonial domicil is to prevail, as to the antecedent property; but the property acquired after the removal is to be governed by the actual domicil."—Story's Con. of L., § 1780. This rule is plain and simple, and commends itself for its justice and equity, for there can be no justice in permitting the husband to acquire title to all the property of the wife, simply by a removal from one State to another, especially when we consider that he can control the domicil of the wife. It is true, that if it were contrary to the laws of the actual domicil to allow married women to own property separate from their husbands, then their title to such separate property could not be protected by those laws. But no good reason, in my judgment, can be assigned why the husband should acquire title to all the property of the wife by a removal to a country that recognizes the right of married women to own separate property. The removal of Campbell and wife from Texas to this State worked no change of title to the property they respectively owned, and the court therefore committed no error in the instructions given to the jury.

The other questions growing out of the assignment of errors, we have examined, and deem it sufficient to say we can perceive no error in the record, and the judgment must be affirmed.