JESSE McLENDON, plaintiff in error, *vs.* WILSON, CALLA-
WAY & COMPANY, defendants in error.

(BLECKLEY, Judge, having been of counsel, did not preside in this case.)

1. Where a settlement was made on the basis of an abstract of account taken from plaintiffs' books, and not by reference to the books themselves, there was no error in allowing one of the plaintiffs to testify that such abstract was correct.

2. There was no error in allowing one of the plaintiffs, who conducted the negotiations with defendant, to testify that the drafts were given in final settlement of the account between the parties so far as he knew, defendant having stated that he signed the drafts with the understanding that any errors in the account should be subsequently corrected.

3. Where the drafts were drawn by the defendant upon the plaintiffs, and acceptance was therein waived, parol testimony was admissible to show the circumstances attending the making of the same, and the reasons for such waiver.

4. Evidence that defendant stated his intention not to pay the drafts shortly after signing them, and in the absence of the plaintiffs, was properly rejected.

5. Where, to an action on such drafts, previous payments of usury were pleaded as a set off, it was not error to charge the jury that such set-off should be allowed if pleaded within four years from date of last payment.

Evidence. Negotiable instruments. Interest and usury. Statute of limitations. Before Judge BUCHANAN. Troup Superior Court. November Term, 1875.

The following, taken in connection with the decision, sufficiently reports this case:

McLendon purchased cotton and shipped it to Wilson, Callaway & Company to be sold; the latter advanced money to him for that purpose. Defendant shipped consignments of cotton to plaintiffs, some of which were not sold immediately.

The evidence was conflicting as to whether any instructions were given by defendant in regard to its sale, and whether he was injured by the delay in selling. Two members of plaintiff's firm, Wilson and Orme, went to defendant's house to effect a settlement with him, and the drafts sued on were then given.

Defendant filed a plea on March 4th, 1869, wherein he alleged various overcharges and errors in the account on which the drafts were founded, and that it was understood between the parties, at the time of signing the drafts, that any error in said account should be corrected. The plea also alleged that "in another transaction with said firm, in account rendered, there are manifest errors of interest overcharged."

An amended plea was filed November 21st, 1872, in which. it was alleged that plaintiffs had advanced to defendant $15,000 00; that he had placed in the hands of Orme, on November 27th, 1867, $17,700 00 worth of stock in the Atlanta and West Point Railroad Company, which was to be sold and the proceeds placed to his credit, so as to prevent interest from accumulating against him; that plaintiffs had held said stock till it depreciated in value, before selling it, and that the plaintiffs caused him to pay interest at the rate of one and a half per cent. per month. A statement of these payments was made, (the last being dated May 7th, 1868,) and a set-off was claimed therefor, amounting to $1,750 00.

On the trial, defendant testified, substantially, as follows: The payments of usurious interest were as alleged in his plea; also the errors in the account of plaintiffs. Wilson and Orme came to defendant's house to effect 'a settlement; defendant refused to settle, alleging errors in the charges; they went over a number of accounts, most of the time in defendant's presence. All three started to defendant's office; on the road he and Orme walked together, Wilson walking ahead; Orme urged him to sign the drafts, and stated that any errors in the account should be corrected afterwards; with this understanding defendant agreed to do as requested. Arrived at the office, he told Wilson that he would sign the drafts, and did so.

Did not examine them carefully; supposed they were in the usual form.

Defendant offered to prove by John S. Johnson that soon after he had signed the drafts, he stated that he had signed them because Orme promised that any errors should be corrected; that the account was outrageous, and he did not intend to pay it.  This evidence was rejected.

R. T. Wilson testified, in brief, as follows: Conducted the settlement with defendant.  Hearing that the latter was dissatisfied with the account, went to his house in company with Mr. Orme, another member of plaintiffs' firm.  Stated to him that they had come to effect a settlement.  He replied that the charges were excessive.  Witness, thereupon, proposed to examine the account, item by item, and promised to correct any error which defendant should point out.  They made a thorough examination of the account; at the close of it defendant expressed himself satisfied, and agreed to sign the drafts.  They afterwards went to defendant's office, he and Orme walking a little behind witness, and the drafts were there signed.  Knows nothing of any agreement to correct errors afterwards.  Excepting a transaction between Orme and McLendon, which had already been settled by those parties, the drafts were given in full settlement of all accounts between plaintiffs' firm and defendant, so far as witness knows. [Objected to by the defendant.]  The abstract of accounts from the books of plaintiffs, which was used in the settlement, was correct. [Objected to by defendant.]  Acceptance was waived in the drafts at the special instance of witness.  The object of the waiver was that witness wished to discount the drafts at bank, and make defendant primarily liable thereon, as drawer, instead of plaintiffs, as acceptors; and further, that witness believed defendant would use greater diligence in paying them if he were first liable.   [Objected to by defendant.]

W. P. Orme testified that he loaned defendant $15,000 00 on behalf of the firm; that defendant gave notes therefor, and placed in the hands of witness certain railroad stock to be sold and the proceeds applied to the debt; that stock was

McLendon *vs.* Wilson, Callaway & Company.

declining, and at defendant's request it was not sold and his notes were renewed. Finally it was sold and credit given him therefor; there is a balance of $311 00 due defendant on the transaction. Denies agreeing to correct errors after drafts should be signed.

The jury found for the plaintiffs $4,370 57. Defendant moved for a new trial on the following, among other grounds:

1st. The rulings as to the evidence stated above.

2d. Because the court charged, among other things, that if the defendant made payments of usurious interest, he is entitled to set-off the usury against the plaintiffs' claim, provided that it was pleaded within four years from the date of the last of such payments.

The motion was overruled, and defendant excepted.

BIGHAM & WHITAKER, for plaintiff in error.

FERRELL, HAMMOND & BROTHER, for defendants.

WARNER, Chief Justice.

The plaintiffs brought their action against the defendant on two drafts, dated 31st of August, 1867, for $3,819 24, each, one due at ninety days, and the other at sixty days, drawn by defendant on plaintiffs, payable to their order, acceptance waived. To this action the defendant pleaded several pleas, as set forth in the record, in one of which the defendant alleged that the plaintiffs were indebted to him the sum of $1,750 00, for usurious interest received. On the trial of the case, the jury, under the charge of the court, found a verdict for the plaintiffs for the sum of $4,370 57—reducing the amount claimed to be due on the two drafts $3,267 91. The defendant made a motion for a new trial, on the various grounds therein set forth, which was overruled by the court, and the defendant excepted.

It appears from the evidence in the record, that the two drafts sued on were given in liquidation of an account held by the plaintiffs against the defendant, and one of the main ques-

tions on the trial, was whether, at the time the drafts were signed, the defendant insisted that the amount of the account was wrong, and that plaintiffs agreed that if there was anything wrong in the account it should be corrected, and, upon that representation, the defendant signed the drafts. The evidence upon this point in the case was conflicting.

1. There was no error in admitting the answer of Wilson in evidence, that the account for which the drafts were given was a true extract from the books of the plaintiffs. The items of the account were stated in the abstract, and it was for the account thus stated that the drafts were given, and not for the items on the books of plaintiffs, unless the abstract and the books contained the same items, as stated by the witness. If the defendant had desired to have seen the plaintiffs' books, for the purpose of verifying the items in the abstract, before giving the drafts, he could have done so, or have relied on the abstract as he did do, and for which the witness stated the drafts were given.

2. There was no error in allowing the witness, Wilson, to testify that the giving of the drafts was in full settlement of all matters between plaintiffs and defendant, and was satisfactory to all parties, so far as he knew or believed, the court rejecting the word "believed," so as to make the testimony read so far as he knew; especially was this testimony admissible, in view of and in reply to the evidence of the defendant.

3. There was no error in allowing the witness, Wilson, to give his reasons why acceptance of the drafts was waived, or his other testimony, objected to by the defendant, as contained in the bill of exceptions, in view of and in reply to the testimony of the defendant in relation to the transactions between the parties.

4. There was no error in ruling out the testimony of Johnson, as to what the defendant told him shortly after the drafts were executed, in the absence of the plaintiffs, that he did not ntend to pay them, etc. A party cannot manufacture evidence for himself in that way.

5. When this case was before this court on a former occa-

sion, and which is reported in the 52d volume of *Georgia Reports,* 41, a new trial was ordered for error in the charge of the court, in excluding from the consideration of the jury the evidence of the defendant as to the intention and understanding of the parties, that the amount which he claimed to be erroneous, for which the drafts were given, should *thereafter* be corrected. In looking through the charge of the court at the last trial of the case, in view of the rulings of this court, the questions in issue between the parties, including the question as to the bar of the statute, as to the claim for usury, were fairly submitted to the jury, under the law applicable thereto, and there was no error in the charge of the court as given, or in the refusal to charge as requested. There is sufficient evidence in the record to sustain the verdict, although that evidence was conflicting. The credibility of the witnesses, and the weight to which their testimony was entitled, was a question for the jury exclusively, and not a question for this court to decide. Whilst we have no power to compel parties to be *satisfied* with the verdict of a jury of their neighbors, upon questions of fact, when there is conflicting evidence as to their rights, and no rule of law violated by the court, still we have the power to compel them to *acquiesce* in such verdicts, and not disturb the country with any further litigation, as we now do, by affirming the judgment of the court below in this case, in overruling the defendant's motion for a new trial.

Judgment affirmed.