STATE OF MISSOURI, EX REL. J. S. CUNNINGHAM ET UX., Respondent, *v.* JAMES CARROLL ET AL., Appellants.

### December 3, 1878.

1. The interpretation of a contract will generally be governed by the law of the place where the contract was made; but questions of personal capacity and questions depending upon the subsisting domestic relations of parties will generally, upon a change of residence, be determined by the law of the domicile.

2. Where, by the law of the domicile at the time of the marriage, the personalty of a married woman is her sole and separate property, such property, when brought into Missouri, will be exempt from execution to satisfy the husband's debts without the intervention of a nominal trustee, the husband becoming trustee by operation of law.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

This is a suit upon a constable's official bond, for alleged malfeasance in seizing and selling the separate property of the plaintiff in interest, Elizabeth Cunningham, under an execution against her husband, James S. Cunningham. Plaintiffs obtained judgment in the Circuit Court, from which the defendants appealed.

The plaintiffs Cunningham were married in May, 1871, in the State of Ohio, where they resided thereafter until August, 1874, when they removed to this State and established themselves in the city of St. Louis. By the law of Ohio, as shown in evidence, all personal property owned by the wife at the time of her marriage, or afterwards purchased with her means, became and remained her separate property, and could not be subjected to any demands against her husband. The property levied on in this instance consisted of a lot of household furniture which belonged to Mrs. Cunningham at the time of her marriage, or was afterwards purchased with her means while residing in Ohio, and was brought to this State by the plaintiffs at the time of their removal. The levy complained of was made in

March, 1875, a few days prior to the enactment of our present statute securing to a married woman her separate personal property against liability for the debts of her husband.

SMITH & McCANN, for appellants : There being a conflict between the law of Ohio and of Missouri as to the rights of the parties to the property in controversy, the law of the latter State must prevail. — *Minor* v. *Cardwell*, 37 Mo. 350 ; Story on Confl., sects. 189–199 ; Whart. on Confl., sect. 196 ; *Oliver* v. *Townes*, 2 Mart. 93 ; *Woodford* v. *Stephens*, 51 Mo. 443 ; *Hall* v. *Harris*, 11 Texas, 300 ; *Seymour* v. *Butler*, 8 Iowa, 309 ; *Allison* v. *Bowles*, 8 Mo. 348. The wife must keep her goods separate and distinguishable from those of her husband, and if she permits them to be mixed and confused with his, they are liable to be levied on for his debts. — Schouler's Dom. Rel. 216 ; *Glover* v. *Alcott*, 11 Mich. 470 ; *Gross* v. *Reddig*, 45 Pa. St. 406 ; *Kelly* v. *Drew*, 12 Allen, 407.

L. B. VALLIANT, for respondent : Where the title to personal property has become fixed as the separate property of a married woman by the laws of another State, that title is not disturbed by her removal of the property to this State. — *Murray* v. *Fox*, 11 Mo. 558 ; *Stewart* v. *Bell*, 33 Mo. 134 ; *Doss* v. *Campbell*, 19 Ala. 590 ; *Lyon* v. *Knott*, 26 Miss. 548. Where the property is the separate property of a married woman, and no trustee is named in the conveyance by which she acquires it, her husband becomes trustee by operation of law. — 2 Story's Eq. Jur., sect. 1380 ; *Freeman* v. *Freeman*, 9 Mo. 772.

LEWIS, P. J., delivered the opinion of the court.

In the former hearing of this cause, our attention was not particularly directed to the effect of the rule in equity jurisprudence whereby, when property is conveyed to a married woman for her separate estate, no trustee being named, her husband becomes her trustee for the management of the

property to her use. An application of this rule, by the light of the additional authorities furnished by respondents' counsel, presents the rights of the parties, respectively, in an aspect materially different from that in which they were viewed in our former opinion. The point upon which the case was then made to turn was, that where a party has acquired certain rights under the laws of a foreign State, and moves into this State, whose laws and policy forbid the recognition of such rights, the law of the new domicile must prevail, and the foreign law, or its incidents, cannot be imported to overturn it. The respondents combat this doctrine on grounds of international comity and of certain supposed exceptions applicable to the marital relation. Their counsel suggests that we have misconceived the leading authorities cited in their behalf. Upon a careful reëxamination of those authorities, we fail to perceive the supposed misconception, and find nothing but confirmation of the impressions before received from them. Thus, in the case of *Doss* v. *Campbell*, 19 Ala. 590, the court, after quoting from Judge Story that " where there is no express nuptial contract the law of the matrimonial domicile is to prevail as to the antecedent property," uses this language : " It is true that if it were contrary to the laws of the actual domicile to allow married women to own property separate from their husbands, then their title to such separate property could not be protected by those laws." In adopting the same conclusion, we remarked that the qualification did not affect the rights of the wife in that case, because the statute law of Alabama upon the subject was in accord with that of Texas, the matrimonial domicile. Counsel assumes that we erred in this, because he finds that the Alabama statute to which we referred first appeared in the revision of 1852, whereas the decision was rendered in June, 1851. Yet in the same volume (19 Ala.), at p. 619, is reported the case of *Kidd* v. *Montague*, in which the court passes upon the act " for securing to married women their separate estates,"

etc., reciting that it became a law on March 1, 1848.    This law, substantially the same as that of Texas, had therefore been in force for more than three years when the decision in *Doss* v. *Campbell* was rendered.   The mistake of counsel arises, doubtless, from the fact that the law did not appear in the revision of 1846.   The other suggestions of misconception tion are alike unfounded, but the purpose now in hand indicates no need for us to dwell upon them.

Counsel have all along ignored in argument an established distinction in the operation of conflicting laws in different jurisdictions, as they relate to matters of contract or to rights attached by law to the personal *status* of the parties. As a general proposition, a contract which is void in the country where it is made will be void everywhere, and a contract having a special interpretation under the *lex loci contractus* will be similarly interpreted in the place where it is sought to be enforced.   But questions of personal capacity or incapacity, and questions depending upon the subsisting domestic or personal relations between parties, will generally, upon a change of residence, be determined by the law of the new domicile.   Story on Confl., sect. 69. Under the laws of South Carolina, marriages were indissoluble for any cause.   A couple were married in that State, and afterwards moved into Alabama.   An attempt was made to establish the doctrine that there could be no valid divorce of the parties in Alabama, because that would be in violation of the *lex loci contractus*.   It was held that the law of the actual domicile must prevail in all such cases.   *Harrison* v. *Harrison*, 19 Ala. 499.   This serves to illustrate the general proposition that in controversies arising upon the marital relation, and having reference to the inconsistent laws of different jurisdictions, the tacit contract implied in that relation does not furnish a true test for their solution.   If there were no other test in the present case, and we were still compelled to choose between conflicting regulations of the different States, we could not do

otherwise than adhere to our former disposition of the cause.

In the first discussion of this case, it seemed to be assumed on all hands that as to the rights acquired over the property in Ohio by Mrs. Cunningham, there was a conflict between the laws of that State and those of Missouri. We held, upon ample and conclusive authority, that, granting such a conflict to exist, the laws of Missouri must control. But, considering the case in the aspects presented upon the reargument, we find that this is really not a case of inconsistent regulations in the different States. It is true that Missouri law, at the time of the transactions in question, subjected to execution for her husband's debts the personalty held by a woman at the time of her marriage, but not under a conveyance to her separate use. *Woodford* v. *Stephens*, 51 Mo. 443. It is equally true that Ohio law declared all such property to be exempt from like execution. If the Ohio law did no more than this, then, regarding the matter of exemption as a mere local incident of the marital relation, no rule of comity could introduce it into Missouri, in antagonism to our established policy and in subversion of our authority to legislate upon the domestic relations of our people. But the Ohio statute goes a step further. It provides that " any personal property, including rights in action, belonging to any married woman at her marriage, or which may have come to her during coverture, by gift, bequest, or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, or have grown out of any violation of her personal rights, shall, together with all income, increase, and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken, by any process of law, for the debts of her husband." Here is an investiture of title, — of that peculiar title in a married woman, whose incidents are as fully recognized by Missouri law as by any other. A mere exemption from execution

for her husband's debts would not create it.   That exemption may exist without a separate estate ; but a separate estate always carries the exemption as one of its essential incidents.   The Ohio statute made the personalty held by Mrs. Cunningham at the time of her marriage her sole and separate property, as effectually as if it had been conveyed to her by an instrument expressly creating that limitation.   When brought into Missouri, it found no law here forbidding the existence of such a title.   It found a law identical in effect with that of Ohio, in that it permitted and protected such an estate without the intervention of a nominal trustee, the husband becoming the wife's trustee by operation of law.   *Freeman* v. *Freeman*, 9 Mo. 772 ; 2 Story's Eq. Jur., sect. 1380.   It results that there is really no conflict between the laws of the different States, and no necessity affecting the vital question at issue for deciding that either must prevail over the other.   Mrs. Cunningham's separate estate is as fully protected by the laws of Missouri as by those of Ohio.   It is shielded from execution for the debts of her husband, by the law of her new domicile.

The defendants ask for a reversal upon some other points, which we have not hitherto deemed it important to notice. Most of them relate to admissions or exclusions of evidence. If there were any merit in the objections raised, we could not reverse on that account, for the reason that they were not brought to the attention of the Circuit Court in the motion for a new trial.   We find no error in the giving or refusing of instructions.   It is not the law in Missouri that the mere fact of an intermixture of one's goods with those of another shall deprive the owner of his property, even though such intermixture be not by his act or procurement. Such would be the effect of the instructions asked for by the defendants and refused.   The instructions given for the plaintiffs correctly stated the law on that point.   The jury were instructed, for the defendants, that the officer

making the levy could not be treated as a wrong-doer unless the goods were " identified by the owner and a restoration demanded." This was as far as it was possible for the court to go in that direction.

The judgment of the Circuit Court will be affirmed. All the judges concur.