State of Missouri, to the use of Sarah Goldsoll, Appellant, v. Chatham National Bank et al., Respondents.

### June 21, 1881.

1. Where doubts as to the impartiality of jurors arise, upon the *voir dire*, it is safer to sustain a challenge.

2. *Semble* that a juror is incompetent who, on his *voir dire*, swears that he has a "prejudice that will require a considerable amount of evidence to remove," and which will interfere with his giving a fair trial.

3. Where the wife's ownership of certain personalty is involved, evidence that the husband had the property assessed, and insured, in his name, is not competent against the wife.

4. Testimony incompetent upon the main issue, cannot be introduced merely to contradict statements as to an immaterial matter.

5. A married woman who owns separate personal property in a foreign country and removes with it to this State, is protected in its enjoyment here, independently of her husband's consent.

On Motion for a Rehearing. — 1. A gift expressed to be for the support of the donee, a married woman, and her children, creates a separate estate in her independently of her husband's consent.

2. The earnings of a married woman from a business conducted on her separate account in a foreign country, remain her separate property, without her husband's consent, upon her arrival in this State.

3. Instructions must be considered with reference to the possibilities of their interpretation.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Reversed and remanded.*

C. H. KRUM & E. CUNNINGHAM, JR., for the appellant : The juror was disqualified by reason of his prejudice. The disqualifications enumerated by the statute are not ex-. haustive of the catalogue. — *Lyles* v. *The State*, 41 Texas, 162 ; *Lester* v. *The State*, 2 Texas Ct. App. 432 ; *The State* v. *West*, 69 Mo. 401 ; *The State* v. *Taylor*, 64 Mo. 358 ; *Insurance Co.* v. *Schueller*, 60 Ill. 465 ; *Brittain* v. *Allen*, 2 Dev. 120 ; *Freeman* v. *The People*, 4 Denio, 9. Declarations or statements of the husband are not admissible in evidence against the wife, because the husband is incompetent to testify in a case in which his wife is a party ; and if his statements under oath are inadmissible, much more so are his declarations not under oath. — *Paul* v. *Leavitt*, 53 Mo. 595 ; *Hearle* v. *Kreihn*, 65 Mo. 205 ; *The State* v. *Arnold*, 55 Mo. 91 ; *The State* v. *Jaeger*, 66 Mo. 173. A separate estate in a married woman may be created by a parol gift, when the title to the property will pass without a transfer or conveyance in writing. — *Holthaus* v. *Hornbostle*, 60 Mo. 442. The first instruction is also erroneous in that it required the jury to find that there was an agreement between the husband and wife as to the property acquired by her in a business separate from her husband. It is sufficient if the husband makes no claim to such property, and treats it as his wife's, allowing her to deal with it as her own. — *Gentry* v. *McReynolds*, 12 Mo. 533 ; *Coughlin* v. *Ryan*, 43 Mo. 99 ; *Welch* v. *Welch*, 63 Mo. 57.

LEE & CHANDLER, for the respondents : The court committed no error in admitting the insurance policy and the tax receipts for the purpose of showing that Meyer Goldsoll, husband of plaintiff, claimed this identical property, and exercised acts of ownership and control over the same. It was directly in rebuttal of plaintiff's testimony. The court committed no error in overruling plaintiff's challenges of the two jurors of the panel for cause. Rev. Stats.

469, sects. 2795, 2796; *Eckert* v. *Transfer Co.*, 2 Mo. App. 36; *Baldwin* v. *The State*, 12 Mo. 223; *McComas* v. *Insurance Co.*, 56 Mo. 573; *The State* v. *Hayes*, 23 Mo. 287; *The State* v. *Holme*, 54 Mo. 153; *Keegan* v. *Kavanaugh*, 62 Mo. 230; *O'Brien* v. *Vulcan Iron-Works*, 7 Mo. App. 257.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff sues on an indemnifying bond given by the defendants to the sheriff, under a levy of execution upon certain household furniture as the property of Mayer Goldsoll, but which is claimed to be the property of his wife, Sarah Goldsoll, the plaintiff's usee. Damages are demanded in the sum of $4,400. The verdict of the jury gave the plaintiff $153.75. The plaintiff appeals.

A juror on the *voir dire*, gave answer to questions as follows: "*Q.* Have you received any impressions from what you have read about it, which would have any weight whatever with you in coming to a conclusion, or which would prevent you giving an impartial verdict in this case? *A.* I think I have. * * * *Q.* Have you any prejudice now that would interfere in your rendering a just verdict as between the parties to this suit? *A.* I think I have, sir. * * * I have a prejudice against one of the parties in this case, and I don't think I could give them a fair trial. * * * *Q.* You have no opinion as to the ownership of this property? *A.* None whatever, sir. * * * I wish to state, before we go into this trial, that I have considerable prejudice in this matter, and while I have made up no opinion particularly with reference to this case, there is a prejudice that will require a considerable amount of proof or evidence to remove. * * * I have full reasons, and a number of them, and I feel somewhat prejudiced. * * * I do not care whom the property belongs to, one way or the other. It is simply a matter of prejudice." The

court overruled the plaintiff's challenge for cause, and the juror was sworn.

Personal prejudice against one of the parties in a cause is not among the statutory disqualifications of a juror. But it is universally held that the special designation by statute of certain causes of disqualification creates no limitation against others not so designated, which are clearly founded in the demand for impartial triers. *Chouteau* v. *Pierre,* 9 Mo. 3; *The State* v. *West,* 69 Mo. 401.

In *Winnesheik Insurance Company* v. *Schueller,* 60 Ill. 465, a juror said that " he had some prejudice in his mind against insurance companies generally; that his prejudice was founded on the fact that he could not comprehend their proceedings, but that the prejudice would not affect his verdict." It was strongly intimated that the juror was disqualified, though the court refused to disturb the judgment, for the reason that the only errors assigned were errors of law, and the bias of the juror could not have affected the result. Said the court: "A preconceived prejudice against a party may be as difficult to remove as an opinion. A prejudice is, in some sense, an opinion. In *Burr's Case,* Chief Justice Marshall said : ' Those strong and deep impressions which will close the mind against the testimony which may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection.' 1 Burr's Trial, 416." In *Brittain* v. *Allen,* 2 Dev. 120, the court said : " It seems that the judge disregarded all kinds of hostility but that which related to the particular suit there to be tried. I think that the law is otherwise. The juror should be perfectly impartial, and indifferent causes, apparently very slight, are good causes of challenge; and that which is good cause for quashing the array is good cause of challenge to the polls.   *   *   *   From these cases, particularly the one which states a suit pending, which implies malice, it appears that general hostility, by which I mean that which is

not confined to the particular suit, is cause of. challenge.''
In *Freeman* v. *The People*, 4 Denio, 9, the triers of chal-
lenges were sworn to " well and truly try and well and
truly find, whether the juror is indifferent between the
people of the State of New York and the prisoner at the
bar upon the issue joined.'' It was held that the words
" upon the issue joined '' should have been omitted. Said
the court : " It is not enough that they [the jurors] are
indifferent upon the particular issue to be tried. An actual
and thorough impartiality in regard to the parties is re-
quired ; for no one who labors under prejudice, malice, or
ill will towards another can be in a fit frame of mind to act
impartially where his rights are in question.''

In the light of these views, we find it difficult to say that
the court below was undoubtedly right in overruling the
challenge of the juror for cause, in the present case. It
is true, as was said by Chief Justice Marshall in the Burr
case, that " light impressions which may fairly be supposed
to yield to the testimony that may be offered — which may
leave the mind open to a fair consideration of that testi-
mony — constitute no sufficient objection to a juror.'' But
when the juror swears, as in this case, that he has " a prej-
udice that will require a considerable amount of proof or
evidence to remove ; '' that it is such as would interfere in
his " rendering a just verdict as between the parties to
this suit,'' and would prevent his "giving an impartial ver-
dict in the case,'' there seem rather to be present those
" strong and deep impressions that will combat the testi-
mony offered against them, and resist its force.'' The party
subjected to such a prejudice must take the field under a
great disadvantage. A bare preponderance of testimony
in his favor will hardly suffice for success. But such a pre-
ponderance in favor of his adversary, or even an exact
balancing of the testimony on both sides, may be so rein-
forced by the existing prejudice, that the turning of the
scale will be easy, in that direction. As the judgment in

this case must be reversed for other causes, and the present question can have no bearing in another hearing of the merits, we need only say that, if, in this instance, the admission of the juror to the panel was not clearly improper, it would, at least, have been better to avoid steering so dangerously near the shoals of error.   When doubts arise, in such inquiries, an error in favor of the absolute impartiality of jurors can do no harm.   But an error the other way may easily defeat the ends of justice.

Testimony was admitted, against the plaintiff's objections, tending to prove that the husband, Mayer Goldsoll, had caused the property in controversy to be assessed for taxes in his name, and also that he had obtained insurance upon it as his property.   This was clearly erroneous.   A husband cannot admit away, by word or deed, his wife's separate rights.   It is argued that the testimony was admissible for the purpose of disproving the wife's statements to the effect that her husband had never claimed that he owned the property.   The disguise is too thin.   What he had claimed or not claimed was immaterial to the fact of ownership in the wife.   It cannot be seriously asserted that testimony directly calculated to mislead the jury in the main issue, could be introduced merely to set them right on a matter wholly immaterial to the controversy.

The court, of its own motion, gave an instruction, as follows : —

"If you believe from the evidence that Mrs. Goldsoll's father, prior to her departure for this country, gave her six thousand ($6,000) dollars, or any greater or less sum of money, for the purpose expressed at the time of the gift that it was intended as a provision for the support of herself and children, and if you find that she also had at the time other money and jewels which she had earned and acquired whilst transacting business in her own name and own account in Russia, and if you believe she brought with her to this country the funds thus given to her and thus earned and acquired, and that

after her arrival to the State of Missouri, by agreement between herself and husband to that effect, she continued to hold, manage, and use said fund and the property in which the same was invested as her individual property free from control of her husband, then as a matter of law the court instructs you that said fund thus acquired, held, and used (if it was so acquired, held, and used) by Mrs. Goldsoll, and any property in which the same was invested, continued to be the separate estate of Mrs. Goldsoll so long as it was so held, managed, and used by her, and the same was not subject to seizure as the property of her husband for his debts ; and if the jury believe that any of the property involved in this controversy described in the bond sued upon was the property that Mrs. Goldsoll continued to hold as a part of her separate estate, in manner above supposed, on March 25, 1875, or that it was property purchased by her after said date with her own separate money or means, then she will be entitled to recover the value of said property.''

It is objected to this instruction that as to certain money and jewels which appeared from the testimony to have been acquired and brought to this country by Mrs. Goldsoll, as her separate property, the jury were required to find, in order to a continuance of her enjoyment of it as separate property, that there was an agreement to that effect with her husband. Such is not the law. It is only when some form of ownership permitted in a foreign country is forbidden by the law of the new domicile, that the privileges of such ownership may be modified by a change of residence. The laws of Missouri were ample to protect Mrs. Goldsoll in whatever separate property she had acquired, by gift from her father in Russia or otherwise, whether with or without the consent of her husband. *The State ex rel.* v. *Carroll,* 6 Mo. App. 263. The vice of the instruction appears more clearly, when it is considered in connection with the erroneous testimony about the assessments and

insurances made in the husband's name. The jury might well infer from this testimony, that the husband had withheld his consent to the separate ownership.

The judgment must be reversed and the cause remanded. All the judges concur.

LEWIS, P. J., delivered the opinion of the court, on a motion for a rehearing.

The respondents move for a rehearing on the ground, chiefly, that the court overlooked two controlling decisions of the Supreme Court which are decisive of this cause in their favor, to wit: *Holthaus* v. *Hornbostle*, 60 Mo. 439, and *Welch* v. *Welch*, 63 Mo. 57. We are told by the respondent's counsel that, in those cases, "it is held that in order to create a separate estate in personal property in a married woman, there must be an agreement or assent on the part of the husband that she shall so hold it, when it comes by way of a verbal gift from a third person to her, or is acquired by her own earnings." We find no such doctrine in either of those cases, nor in any other authority, elementary or judicial.

In *Holthaus* v. *Hornbostle*, the personal property was given to the wife by her step-father, with such express reservations and stipulations as were found by the court sufficient to create in her a separate estate. It clearly appears from the opinion that the terms of the gift, alone, were ample for that effect. The fact is, added that the husband at all times acquiesced in the arrangement. But not a word or a line intimates that such acquiescence was essential to the existence of the separate estate. It is as if a court, in recounting the facts of a wilful murder, mentions, among other incidents, that the perpetrator employed a knife as the instrument of his crime; whereupon the inference is maintained, that there can be no wilful murder without the aid of a knife.

*Welch* v. *Welch* is one of a class of cases in which the

terms of the gift to a married woman are not such as to create in her a separate property, but the acts of the husband become, nevertheless, sufficient to effect that result. It is distinctly alleged in the agreed statement, that " she [the wife] never had any technical separate estate conveyed to her by any separate estate trust-deed, but claims the above by virtue of their being her own earnings, which the husband allowed her to keep." Here, the separate estate was created, chiefly, by the permissive act of the husband. But it is nowhere said in the opinion that a separate estate can never be created in any other way. The contrary is plainly implied in the language of the court : " If the property is not given to the wife as her separate estate for her sole and exclusive use, *then* the husband becomes vested with the ownership."

The doctrine easily gathered from all the authorities, is simple enough. A gift or transfer to a married woman, from a third person, may be made upon terms and conditions implying that she is to hold and enjoy the property in her sole, separate, and exclusive right, free from any ownership, dominion, or control on the part of her husband. In such cases, the intention of the donor or transferror furnishes the only test necessary to determine the character of the wife's ownership. The assent or dissent of the husband is of no consequence, one way or another. Such gifts or transfers are usually made for the special purpose of protecting the wife's enjoyment of the property against the husband or his creditors. To say, as the instruction given in this case seems to assume, that not only the initiative, but the continuing consent of the husband is necessary to effectuate such protection, will involve a manifest absurdity. By withdrawing his consent, the husband could at any time rise superior to all the powers exercised by courts of equity for arresting improper interferences by husbands with the separate property of their wives.

Where, however, the terms of the gift or transfer from a

third person are not such as to create a separate estate in the wife, or where the property comes from the wife's individual earnings, the acquiescence of the husband becomes a factor among the constituents of a separate estate. In the case of earnings it is sufficient if the husband consent to his wife's carrying on a separate business in her own name, and on her own account. No further consent is necessary to vest in her the sole and continuing ownership of the earnings or profits derived from such business. *Coughlin* v. *Ryan*, 43 Mo. 99.

The instruction given in this case, which we hold to be objectionable, presents two hypotheses of fact: One, that Mrs. Goldsoll's father, prior to her departure for this country, gave her $6,000,   *   *   *   *for the purpose expressed at the time of the gift, that it was intended as a provision for the support of herself and her children,"* etc. Undoubtedly, according to all the authorities, this expression of purpose and intention, in connection with the gift, was sufficient to create a separate property in the donee, whether with or without the consent of her husband. The other hypothesis is that Mrs. Goldsoll " also had at the time other money and jewels which she had earned and acquired whilst transacting business in her own name and own account in Russia," etc. There can be no presumption that Mrs. Goldsoll's business was thus carried on without the consent of her husband. If any presumption is admissible, it should be of the contrary. At all events, the instruction must be considered with reference to the possibilities of its interpretation. According to these, the jury might well infer, from what follows in the instruction, that, although the earnings of Mrs. Goldsoll were derived from a business carried on by her on her own sole and separate account, with the full consent of husband, yet her continued holding of such earnings, " after her arrival to the State of Missouri," must have been " by agreement between herself and husband to that effect," or else her separate estate in them must have vanished. Such is not

the law. Counsel say rightly that, no evidence appearing of what was the law in Russia, we must act on a presumption that it was similar to that of Missouri. The transactions must, therefore, be considered as if all had occurred under the laws of this State. Under these laws, the hypotheses in the instruction present a clear case of property vested in the wife before she came to this country. It needed no confirmation, and could not be disturbed by any act of the husband, after the change of residence.

*Pawley* v. *Vogel*, 42 Mo. 296, and *Walker* v. *Walker*, 25 Mo. 375, which are also cited to us as controlling decisions, have not the least application, that we can discover, to any question in this case. The correct principles above considered will be found illustrated and amplified in the following authorities : *Clark* v. *Maguire*, 16 Mo. 302 ; *Coughlin* v. *Ryan*, 43 Mo. 99 ; *Freeman* v. *Freeman*, 9 Mo. 773 ; *Boal* v. *Morgner*, 46 Mo. 48 ; *Schafroth* v. *Ambs*, 46 Mo. 114 ; *Whitesides* v. *Cannon*, 23 Mo. 457 ; *Lee* v. *Prieaux*, 3 Bro. C. C. 382 ; *Hartley* v. *Hurle*, 5 Ves. Jr. 540 ; *Dixon* v. *Olmius*, 2 Cox Ch. 414 ; Schouler's Dom. Rel. 187, 250.

The motion for a rehearing is overruled. The other judges concur.