Grote *et al.*, guardians, *vs.* Pace, administrator, *et al.*

GROTE *et al.*, guardians, *vs.* PACE, administrator, *et al.*

1. A testator died in 1848, leaving a widow and four minor children. By the third item of his will, he directed such of his estate as was not required to pay debts and specific legacies to be kept together for the support and maintenance of his wife and children, and for the education of the children. In case his wife should marry again, he directed that she should have from his estate one equal share, regarding her and each of the children in life at her second marriage as shareholders. By the fourth item, he appointed an executor and a successor after the death of the first executor, and invested his acting executor with full power to sell any portion of the estate, and to buy any property with assets belonging thereto, and "in any and every manner to change, either by purchase or sale, the nature of the estate, whenever it would, in his judgment, promote the interest of the same:"

*Held,* that it was the intention of the testator that his wife and children should have equal shares of his property, excluding the wife's right to dower and the allowance of a year's support for the family, postponing a distribution until the happening of the contingencies named therein, and in the meantime charging it with the maintenance and support of the wife and children. The legacies vested immediately upon the death of the testator; the widow took a full share in the estate with her children, and at her death intestate, the property passed to her heirs at law under the statute of distributions.

2. Where a marriage took place prior to the passage of the act providing that the wife's property should remain her separate estate, the husband had the right to reduce the wife's property to possession as his own; and he could still do so after the passage of that act; but it was optional with him to do so or not, and if he failed or refused to subject it to his control, he could not be compelled to do so by creditors or others, to the exclusion of the wife's rights or interest therein.

(a.) A husband having never asserted his marital rights, the property remained the separate estate of the wife, and, together with that inherited after the passage of the act of 1866, was subject to distribution, according to the laws of the state where she had her domicile at the time of her death.

3. Where a woman entitled to an estate married prior to 1866, lived in Georgia until after that time, and then removed to Alabama, her husband having never asserted or exercised his marital rights as to the property, and it not being carried into Alabama, such property was not a statutory trust estate under the law of Alabama. But upon her death intestate, it passed under the general law of descents and distributions of that state.

(*a.*) Two things were necessary to bring the property within the operation of the statutory system of Alabama securing to married women a separate ownership of their property; first, that the matrimonial domicile should be in that state, and second, that during that time the property sought to be affected by that law should be brought into the state.

(*b.*) Had the property (railroad stock) gone into Alabama in the form in which it now exists, it would not have been changed from the absolute, unincumbered, separate estate that it is under the laws of Georgia into the trust estate created by the peculiar legislation of Alabama.

(*c* ) The right and disposition of personalty is to be governed by the law of the domicile of the owner, and not the law of the location of the property.

(*d.*) It has been held by the Supreme Court of Alabama that the laws of the state in which a marriage is celebrated govern the rights of each party to the property of the other, and their subsequent removal to another state only affects property afterwards acquired.

February 9, 1884.

Wills. Legacies. Estates. Comity of States. Laws. Husband and Wife. Trusts. Inheritance. Before Judge STEWART. Newton Superior Court. March Term, 1883.

Reported in the decision.

CAPERS DICKSON, for plaintiffs in error.

L. L. MIDDLEBROOKS; J. M. PACE; A. M. SPEER, for defendants.

HALL, Justice.

Charles Lane, of Newton county, Georgia, died testate in 1848, leaving his widow and four minor children. By the third item of his will he directed such of his estate as was not required to pay debts and specific legacies, to be kept together for the support and maintenance of his wife and children, and for the education of the children; in case his wife should marry again, then he directed that she should have from his estate one equal share, regarding her and each of the children in life at her second marriage as

shareholders. By the fourth item he appointed Lucius Whittich his executor, and also appointed a successor after this executor's death, and thereby invested his acting executor with full power to sell any portion of the estate, and to buy any property with assets belonging thereto, and "in any and every manner to change, either by purchase or sale, the nature of the estate, whenever it would, in his judgment, promote the interest of the same." The widow did not marry again, and died intestate in the year 1876; two of the children, George and Lucius, died in minority during the life-time of the mother, never having been married, and leaving no descendants; Charles, attaining his majority, received his share of the estate, and had no further claim upon the balance that was kept together for the benefit of the widow and her daughter, Caroline B. Caroline B. was married to Rev. Luther M. Smith on the 16th day of May, 1865, and thereafter they resided in Georgia until September, 1875, when they removed to the state of Alabama, where they continued to reside until their respective deaths. Mrs. Smith died in July, 1877, leaving her husband surviving and four minor children; the husband died in 1879; LaPrade is guardian for one of these minor children, and Grote for the other three. So much of Charles Lane's estate as had not been assigned to his son Charles remained undivided in the hands of his representative until the death of Mrs. Smith and the appointment of an administrator on her estate in Georgia, when it was turned over to him. Although Mrs. Smith, during the life of her mother and thereafter until her own death, drew a support from the income of her father's estate, her husband never attempted to reduce to possession either her share of the *corpus* of this estate or the income thereof, but carefully abstained from any assertion of his marital rights in this property. The property in question was never out of the state of Georgia. The same person who administered on the wife's estate, also administered upon the husband's. He brings this bill to get the direction and

decree of the court as to the distribution of the fund in his hands.

The questions made at the trial were, whether the husband was entitled to the whole of this property or only to a part, or whether he was entitled to any of it; in short, whether it was his or the children's, whether he took jointly with them—he being entitled to one moiety, and they to the other—whether he took to their exclusion, or they to his.

The judge in the court below distributed this estate under what he conceived to be the statute of Alabama, the domicile of both the husband and wife at their respective deaths, giving by the decree one-half thereof to the minor children, and the other half to the surviving husband; and to this decision exception was taken by the children, and the exceptions thus taken make the questions for our determination.

1. The construction we place upon the will of Charles Lane, from whose estate the fund in controversy comes, is that it was manifestly his intention that the wife and children should have equal shares of his property, excluding the wife's right to dower and the allowance of a year's support for the family, postponing the distribution until the happening of the contingencies named therein, and in the meantime charging the same with the maintenance and support of the wife and children. The legacies vested immediately upon the death of the testator; the widow took a full share in the estate with her children, and at her death intestate, her property passed to her heirs at law, under the statute of distributions.

2. The property in question belonged to Mrs. Smith prior to her marriage, and by the laws of this state her husband had the right to reduce it to possession at any time during the coverture, but it was optional with him to do so, and if he failed or refused to subject it to his control, he could not be compelled to do so by creditors or others, to the exclusion of the wife's rights or interest therein. The property was

Grote *et al.*, guardians, *vs.* Pace, administrator, *et al.*

not encumbered by any trust, and both at the time of its acquisition and the marriage of the parties, there was no law in existence making it the separate property of the wife. When the time arrived for taking possession of it, there was such a law, but this did not prevent the husband from exercising his rights acquired previous to the passage of that act, and which dated back to his marriage in 1865. In *Comer & Co. vs. Allen*, this court, at its present term, decided that where a marriage took place prior to the passage of the act of 1866, the husband had a right to reduce his wife's property to possession as his own, and he could still do so after the passage of that act; but if thereafter he reduced it to possession for her, as her estate, and in consideration of having made use of it for his own purposes, gave her a mortgage *bona fide* to secure the debt so created, the lien was good, and took precedence of the subsequently-acquired liens of other creditors, although he may have been in failing circumstances. To the like effect as to his right to reduce to possession and the consequences of his refusal or failure to exercise that right under similar circumstances, were the previous decisions of the court in *Sperry & Niles vs. Haslam*, 57 *Ga.*, 442, and *Archer et al. vs. Guill*, 67 *Ib.*, 195. *Sterling vs. Sims*, decided at this term, goes fully into the authorities, and reaches the same conclusion. This property, whether derived directly from her father's estate, or by inheritance from her mother who died subsequently to the passage of the act of 1866, securing to married women all property acquired by them thereafter as their separate estate, free from the disposition and control of their husbands, was Mrs. Smith's absolute estate at her death, subject to distribution among those entitled thereto by the laws of the state where she then had her domicile.

3. Under what law of Alabama was this property to be distributed among her heirs? She was unquestionably the stock of inheritance, from her these different claimants derived what right they had to this personal estate.

v 71–16

On the one hand, it is contended that, by the laws of Alabama, this was her statutory trust estate; that by that law, all property held by her previous to the marriage, or to which she became entitled after the marriage, in any manner, was her separate estate, and not subject to the payment of the husband's debts; that this property vested in the husband as her trustee; that he had the right to manage and control it, and was not required to account with her, her heirs or legal representatives, for the rents income and profits of the same, etc.; that having such separate estate, if she died intestate, leaving her husband living, he was entitled to one-half of the personalty belonging to the same absolutely, and to the use of the realty during his life, unless he had been divested of all control over it by a decree in chancery, as therein provided. Alabama Code of 1876, §§2705, 2706, 2714.

On the other hand, it is insisted that the property in controversy was never in the state of Alabama, and being in another jurisdiction was never controlled by the provisions of that particular law; but that it passed under the general statute of descents and distribution of that state, by which the entire inheritance devolved upon the children to the exclusion of the surviving husband. *Ib.*, §§2252, sub-sec· 1, 2, 3, and 2261.

If the husband's administrator is correct in this position, then is the decree rendered proper, otherwise it is erroneous in so far as it awards any portion of this railroad stock to him.

While the precise question raised by this issue, has never, so far as our researches go, been decided by the courts of our sister state, yet we are satisfied that they have settled principles so entirely analogous as to leave little doubt as to what would be their conclusion were this case before them. They came very near determining the point in Hardy *vs.* Boaz's administrator, 29 Ala. R., 168, if we are not misled by Brickell's Digest of that case. We regret that the volume containing the case is not

accessible. It was there held that " property vesting in the wife by bequest to her and others, before the statutes, but the distribution and right of possession being postponed to a period occuring after the statute is not a statutory separate estate." According to the *privatum jus gentium*, the doctrine held by nearly all jurists is that the right and disposition of movables is to be governed by the law of domicile of the owner, and not by the law of their local situation. Story's Conf. L. §376. "It is a clear proposition," said Lord Loughborough, "not only of the law of England, but of every country in the world where law has the semblance of science, that personal property has no locality; but it is subject to the law that governs the person of the owner, both with respect to the disposition of it, and with respect to the transmission of it, either by succession or the act of the party. It follows the law of the person. The owner in any country may dispose of his personal property. If he dies, it is not the law of the country in which the property is, but the law of the country of which he is a subject, that will regulate the succession." 1 H. Bla., 690.

The same doctrine was recognized by Ld. Ch. J. Abbott, on another important occasion. "Personal property," said he, " has no locality. And even with respect to that, it is not correct to say that the law of England gives way to the law of the foreign country; but that it is a part of the law of England, that personal property should be distributed according to the *jus domicilii*." "The same doctrine has been constantly maintained, both in England and America, with unbroken confidence and general unanimity." Story Conf. L., §380 and cases cited in notes. It is expressly recognized by our Code, §8; and in connection therewith see *Ib.*, §9, as to comity of states.

In Doss *et al. vs.* Campbell, 19 Ala., 590, the Supreme Court of that state held, " that the laws of the state in which a marriage is celebrated govern the rights of each party to the property of the other, and their subsequent removal to

another state only affects property afterwards acquired. Therefore, where a marriage was celebrated in Texas, by the laws of which the husband acquires no interest in the wife's property by the marriage, the subsequent removal of the parties, with their property, to this state does not subject the wife's property to the husband's debts." In Drake and Wife *vs.* Glover, 30 *Ib.*, 382, 388, it was held to be unquestionable law, that whatever title the wife may have acquired in Louisiana, while she and her husband were domiciled in that state, would be unimpaired by the change of the matrimonial domicile and the removal of the property to the state of Alabama. But that the mode of conveying the property after its removal to Alabama, and the change of domicile to that state must be governed by its laws and not by the laws of Louisiana. The *lex loci contractus* governed as to the nature of the obligation and the interpretation of the contract. An exception, however, prevailed as to stocks and other like property owing its existence to, or regulated by, peculiar local laws; but it was clear that the transfer in Alabama, of personal property, being in the state at the time, by parties domiciled in the state, would be valid or invalid according as it might or might not conform to, and consist with, the laws of the state.

This case and others were reviewed, and the principles it asserts were re-established in Castleman *vs.* Jeffries, 60 Ala., 380, 387. Lands were owned by the plaintiff and her sisters situated in Texas; they were sold, and so much of the proceeds of the sale as belonged to her were transmitted in money to Alabama, where it seems she had her domicile both before and after her marriage. The proceeds were disposed of in the state of their domicile, and the question was whether the laws of Texas followed this money into Alabama, and regulated its disposition there, or whether this was controlled by the laws of Alabama. Stone, J., who delivered the opinion, said: "The plaintiff and her husband are residents of this state; they were

probably married in this state; and it follows that the laws of no foreign state have stamped their impress on any personal property belonging to either which can follow and attach to it in this state.   *   *.   *   *   If we were to apply to the products of property having its *situs* in another state, yet owned by persons domiciled in this, and who bring such products into this state, the laws which governed the property in the state from which the products were brought, we should soon find ourselves involved in confusion of which the shrewdest can scarcely conceive. It is not beyond the pale of possibility, that one and the same person may own lands in several different states, in one of which the common law prevails, in a second the civil law, and in others various modifications of statutory systems which secure to married women the separate ownership of their property.   In the several landed interests thus situated, the owner being a married woman and having her domicile in this state, would have various rights, and her powers of alienation and enjoyment might be equally variant.   Now let these lands be converted into money, and the money brought into Alabama, the domicile of the wife; how could the character of estate, which local law had impressed upon the land, follow the money into this state, and stamp its characteristics upon it?   Money has no ear-mark, and the profession will readily understand into what inexplicable confusion such a holding would lead."

Two things were necessary to bring the property in this case within the operation of the statutory system of Alabama, securing to married women the separate ownership of their property.   First, that the matrimonial domicile should be in that state, and secondly, that during that time the property sought to be affected by that law should be brought into the state.   The first only of these conditions exists.   The property was never in the state of Alabama, and if it had gone there in the form in which it now exists, it would not, according to these decisions, have been changed

from the absolute, unincumbered separate estate that it is under the laws of Georgia into the trust estate created by the peculiar legislation of Alabama. There is no case made for the particular inheritance provided for by this peculiar legislation; and it follows from this that the contending parties inherit under the general law of descents and distribution of that state, where the intestate, at the time of her death, was domiciled. By this law the children succeed to the inheritance, to the exclusion of the surviving husband. The decree rendered in the case must be modified in accordance with these views, and when so modified it must be carried into effect; and further, that the fund turned over to the guardians of the children of Caroline B. Smith be taxed with the costs of this suit.

Judgment reversed.