BILLMEYER, by next friend, Respondent, v. St. LOUIS TRANSIT COMPANY, Appellant.

**St. Louis Court of Appeals, October 18, 1904.**

**JUROR: Challenge for Cause: Prejudice.** Where, in an action against against a street railway company for personal injuries caused by defendant, a juror, on his *voir dire* examination, said that he had a prejudice against the defendant company because by its criminal crelessness, it came near killing two members of his family, that he entertained a hard feeling against the defendant, which he could not get over in the jury box, that it would require more evidence. for him to render a verdict for the defendant than for some other defendant, it was error to overrule the defendant's challenge of such juror for cause.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Geo. W. Easley* and *Edward T. Miller* for appellant.

*Richard F. Ralph* and *Chas. F. Krone* for respondent.

## STATEMENT.

E. J. Meyer, one of the jurors who tried this case, testified on his *voir dire* as follows:

"Q. Have you any prejudice in a case of this kind? A. I ought to have; they came pretty near killing a couple of the members of my family. That would not prejudice me so far as that goes in this case.

"Q. You think you could try the case fairly and impartially as far as the Transit Company? A. I think I could.

"Q. You would not come in with supposition they were always negligent and careless? A. No, sir.

"Q. You would give them as fair a trial as you would the plaintiff? A. I would.

"Q. You do not know Mr. Miller who represents the Transit Company? A. No, sir.

Q. You are sure you could try the case fairly? A. Yes, sir.

"Q. You say two members of your family were recently injured by the defendant? A. The criminal carelessness of it caused it.

"Q. Were they riding in the cars? A. Yes, sir.

"Q. Were they in a collision? A. No, sir.

"Q. Was it an injury while getting on or off of a car? A. An injury after they got off of the car.

"Q. That fact of itself has naturally caused some hard feeling against the management, against the Transit Company, has it not? A. They did not take any interest in the matter at all and I wanted them to do so.

"Q. You have some rather hard feeling against them for the way they treated the matter? A. Yes, sir.

Billmeyer v. St. Louis Transit Co.

"Q. You have it and think you have a right to have it? A. Yes, sir.

"Q. If selected as a juror in this case, as one of the twelve to try it, you would carry with you into the jury box the same feeling that you now have? A. It will not interfere with my decision in any verdict.

"Q. You would go in the jury box having the same feeling the hard feeling you think you have the right to have against the Transit Company? A. I could not get over that.

"Q. And it would require the defendant to make a stronger defense than if the defendant were some other company where you had not been injured at all by an act of the other company? A. Yes, sir.

"Q. In other words, it would require more evidence for you to render a verdict for the Transit Company than some other defendant? A. Yes, sir.

"Defendant's counsel challenged the juror for cause.

"By the Court: What is the matter that affects your judgment or might affect your judgment? A. I don't think it would affect it at all.

"The Court: What was the basis of your objection to Mr. Meyer?

"Mr. Miller: He said two members of his family were nearly killed by the Transit Company and that left a feeling in his mind against the company.

"By the Court: Would that affect your judgment in this case? A. I don't think it would; I know it would not.

"Q. In spite of this accident to the members of your family you feel you could try the case with absolute fairness so far as the Transit Company is concerned? A. Yes, sir."

GOODE, J. (after stating the facts).—Action for damages for personal injuries sustained by the plaintiff while a passenger on one of the defendant's cars,

and it is alleged, through the negligence of the defendant's servants. We will not look further into the record than is necessary to consider an assignment of error based on the overruling, by the trial court, of the defendant's challenge for cause of a juror who sat in the case. Said juror testified on his examination, that he had a prejudice against the defendant company because it came near killing two members of his family; that they were injured by its criminal carelessness and the fact had caused him to entertain a hard feeling against the defendant which he could not get over in the jury box. He testified further as follows:

"Q. You would go in the jury box having the same feeling, the hard feeling you think you have the right to have against the Transit Company? A. I could not get over that.

"Q. And it would require the defendant to make a stronger defense than if the defendant were some other company where you had not been injured at all by an act of the other company? A. Yes, sir.

"Q. In other words, it would require more evidence for you to render a verdict for the Transit Company than some other defendant? A. Yes, sir."

That testimony disclosed a very strong bias in the mind of the venireman; not exactly a prejudice in the strict sense of that word; for he had not prejudged the particular case, nor formed an opinion about it. Yet it is plain that he cherished a bitter and resentful feeling against the defendant which would be apt to prevent a dispassionate consideration of the case. It is true the juror swore he did not think his feelings would affect his judgment and that he could give the defendant a fair trial. But his entire testimony produces the conviction that his conception of a trial which would be fair to the defendant, embraced the notion that it would be incumbent on the defendant to clear itself of blame for the accident by stronger evidence than other defendants, in similar actions, ought to adduce. Such

an opinion indicated a spirit of positive hostility that rendered the venireman unfit to perform the duties of a juror. The defendant certainly could not expect, nor likely receive, a fair trial by a man who would refuse to exonerate it from liability unless it made good its defense by an extraordinary weight of evidence— by more evidence than would be needed to induce him to excuse some other defendant.

We have not found the decisions plentiful on the precise question of what bias against a party to a suit will disqualify a venireman; but the whole spirit of Anglo-Saxon jurisprudence is that causes shall be tried by men who are free from partiality or bias for or against the litigants; which indeed is the essence of a trial properly so-called; for every one knows how much a feeling of sympathy or aversion will influence the mind in coming to a conclusion on given facts. The rule of Lord MANSFIELD, a judge particularly attentive to the composition of his juries and their selection by the summoning officers, was that "a juror should be as white as paper and know neither plaintiff nor defendant, but judge of the issue merely as an abstract proposition upon the evidence produced before him. He should be superior even to a suspicion of partiality." It has been said that this rigor of qualification is now relaxed because of the difficulty of procuring such men when the news of events is generally spread by the press and that the prevalent test is the one stated by Chief Justice MARSHALL in Burr's case: "That light impressions which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him." Thompson & Merriam, Juries, sec. 207. The standards.

of those wise judges are not very different; for it will be observed that Lord MANSFIELD was less solicitous that the case should be wholly new to the jurors, than that they should come to the trial of it in a perfectly unbiased temper; and so it was with Chief Justice MARSHALL.

The juror challenged in the court below was not in a mood that left his mind open to a fair consideration of the defendant's testimony and hence was disqualified by Judge MARSHALL's standard. In State v. Bauerle, 145 Mo. 1, 46 S. W. 609, the State's challenge for cause of a venireman who was opposed to capital punishment on circumstantial evidence, was allowed, and the ruling was approved by the Supreme Court, although the venireman swore he believed he would convict the defendant on such evidence, if his guilt was established beyond a reasonable doubt; but that "it would take a great deal of it (i. e. circumstantial evidence), and it would have to be very strong." That man's bias was like the bias of the juror challenged in this case, in that both were in a temper to resist the effect of the evidence they would have to weigh. Of course, an appellate court more readily sustains than reverses the ruling of a trial court on such a question, which is one largely of discretionary action. But the decision of a case by jurors not inspired by animosity against one of the litigants is so important in the administration of justice, that when a venireman is challenged on his own confession of ill will towards one of the parties, deep-seated enough to prevent him from returning a verdict for such party on proof that would satisfy him were some one else concerned, we feel justified in saying it was error to overrule the challenge. McCarthy v. Railroad Co., 92 Mo. 536, 4 S. W. 516; State to use v. Clotham, Bank, 10 Mo. App. 482, 80 Mo. 626.

The judgment is reversed and the cause remanded. All concur.